SMITH, TRUSTEE, ET AL. v. HOBOKEN RAILROAD,
WAREHOUSE AND STEAMSHIP CONNECTING·
CO. ET AL.

No. 384.   Argued December 11, 1945.—Decided April 29, 1946.

*James D. Carpenter* argued the cause and filed a brief for Smith, Trustee, petitioner.

*Parker McCollester* argued the cause for the Hoboken Manufacturers Railroad Company et al., petitioners. With him on the brief was *Edward A. Markley.*

*Edward J. O'Mara* argued the cause for respondents. With him on the brief was *John J. Hickey.*

*Solicitor General McGrath, Assistant Attorney General Berge, Edward Dumbauld, Daniel W. Knowlton* and *Edward M. Reidy* filed a brief for the United States and the Interstate Commerce Commission, as *amici curiae.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Hoboken Manufacturers Railroad Co. (the debtor) operates a terminal switching railroad along the waterfront at Hoboken, New Jersey. It is a common carrier subject to the provisions of the Interstate Commerce Act. 24 Stat. 379, 41 Stat. 474, 49 Stat. 543, 54 Stat. 899, 49 U. S. C. § 1. The major part of its right-of-way and line of railroad is held by it under a 99-year lease from respondent dated June 19, 1906.[1] In 1943 the debtor filed a peti-

---

[1] The debtor has two additional pieces of land under 99-year leases, dated June 19, 1906, from the parent company of the respondent. By a tie-in indenture the debtor agreed that these leases should terminate

tion for reorganization under § 77 of the Bankruptcy Act (49 Stat. 1969, 53 Stat. 1406, 11 U. S. C. § 205) in the District Court for the District of New Jersey. The petition was approved and petitioner Smith was appointed trustee. Shortly thereafter respondent notified the trustee that it would petition the reorganization court for termination of the lease. A hearing was held and decision reserved. While the matter was under advisement the trustee on order of the court adopted the lease. Thereafter the reorganization court granted respondent's motion to terminate the lease, holding that the appointment of the trustee was a breach of the terms of the lease entitling the lessor to reenter.[2] 56 F. Supp. 187. The Circuit Court of Appeals affirmed. 150 F. 2d 921. The case is here on a petition for a writ of certiorari which we granted because of the importance of the problem in the administration of the Interstate Commerce Act and the Bankruptcy Act.

The provision of the lease upon which the forfeiture was decreed reads as follows:

> "The Lessee shall not and will not sell, assign or transfer this lease or underlet the demised premises, or any part thereof, or the rights and privileges, or any of them, hereby granted, without the previous consent of the Lessor expressed by endorsement on this lease made in pursuance of authority granted by resolution of the board of directors of the Lessor . . . This covenant shall also apply to any unauthorized sale or transfer thereof or underletting of the demised premises, or any part thereof, or of the said rights and

---

on the expiration or earlier termination of the main lease mentioned in the opinion. What we say in the opinion also governs these tie-in leases.

[2] Notice was also given by respondent's parent company for termination of the tie-in leases mentioned in note 1, *supra*. The order of the District Court also terminated these leases.

privileges, or any of them, whether made by the Lessee or in any proceeding, whether at law or in equity or otherwise, to which the Lessee may be a party, whereby any of the rights, duties and obligations of the Lessee shall or may be transferred, encumbered, abrogated or in any manner altered, without the consent of the Lessor first had and obtained in the manner hereinbefore provided."

By a further provision of the lease, violation of that covenant entitled the lessor to terminate the lease and to reenter on specified notice.

Sec. 77 (1), 11 U. S. C. § 205 (1) provides:

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

Sec. 70 (b) of the Bankruptcy Act, 11 U. S. C. § 110 (b) provides in part:

"A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable."

We have recently held that those provisions of § 70 (b) of the Bankruptcy Act are applicable to reorganizations under Ch. X. 52 Stat. 885, 11 U. S. C. § 526. *Finn* v. *Meighan*, 325 U. S. 300. It is argued here, as it was there, that § 70 (b) should not be applied in reorganization pro-

ceedings since reorganization plans might be seriously impaired if forfeiture clauses in leases were allowed to be enforced. It is contended that forfeiture of railroad leases runs counter to the design and purpose of § 77, which is aimed at keeping railroad properties intact so that reorganization plans may be worked out and disintegration of transportation systems prevented. It is argued that the policy of § 77 which prevents pledgees and mortgagees from foreclosing their liens (*Continental Illinois National Bank* v. *Chicago, R. I. & P. R. Co.*, 294 U. S. 648; *Group of Institutional Investors* v. *Chicago, M., St. P. & P. R. Co.*, 318 U. S. 523) is equally applicable to prevent lessors from causing forfeiture of leases. It is pointed out that § 77 (a) gives the reorganization court exclusive jurisdiction of the debtor and its property wherever located. It is noted that lessors are creditors as defined by § 77 (b) and that a plan of reorganization can modify or alter the rights of creditors either through the issuance of securities or otherwise. § 77 (b) (1). It is also pointed out that a plan of reorganization may cure or waive defaults and may deal with all or any part of the property of the debtor, § 77 (b) (5), and may provide for the rejection or adoption of leases. § 77 (b). From these provisions and the policy they reflect, it is argued that § 77 should not be construed as incorporating within it § 70 (b).

As we have noted, § 77 (1) provides that, so far as "consistent with the provisions" of § 77, the "duties of the debtor" and the "rights and liabilities of creditors" shall be the same as if a voluntary adjudication had been made. We cannot say that the forfeiture provisions of § 70 (b) on their face are inconsistent with § 77. They embrace leases of all kinds and sorts. They include leases of railroad tracks and facilities but they are not restricted to them. But if § 70 (b) is applicable to some leases under § 77, it

would seem to be applicable to all. And termination of leases would, in many cases at least, be as consistent with reorganizations of railroads under § 77 as it would with reorganizations of other enterprises under Ch. X. Sec. 70 (b) is applicable to reorganizations under Ch. X as we held in *Finn* v. *Meighan, supra.* As we pointed out in that case, an express covenant of forfeiture has long been held to be enforceable against the bankruptcy trustee. That represents the bankruptcy rule. And we find no provision in § 77 which suggests that Congress intended to make that rule inapplicable in case of railroad reorganizations.

It is argued, however, that the covenant in the present lease is not of the kind which is enforceable under § 70 (b). In other words, it is said not to be "an express covenant that an assignment by operation of law or the bankruptcy" of the lessee shall "terminate" or give the lessor "an election to terminate" the lease.

These forfeiture clauses are to be liberally construed in favor of the bankruptcy lessee. *Finn* v. *Meighan, supra.* Yet the covenant in question, so construed, seems to us to fall within § 70 (b). It applies to any "transfer" of the premises "in any proceeding, whether at law or in equity or otherwise," to which the lessee is a party, "whereby any of the rights, duties and obligations" of the lessee are "transferred, encumbered, abrogated or in any manner altered" without the lessor's consent. When the trustee adopted the lease, the lessee's interest was transferred to him. *Palmer* v. *Palmer,* 104 F. 2d 161. That transfer, being in a § 77 proceeding, was made in a "proceeding, whether at law or in equity or otherwise." The lessee was a party to the proceeding. And by the adoption the trustee acquired such rights and obligations under the lease as the lessee had.

But the question remains whether enforcement of the forfeiture clause would be "consistent with the provisions"

of § 77 within the meaning of § 77 (1). That question does not seem to have been considered by the lower courts. Our view is that it presents problems primarily for consideration and decision by the Interstate Commerce Commission and that the reorganization court should not have declared a forfeiture of the lease until the questions had been passed upon by the Commission. There are two aspects of that problem. The first relates to abandonment of operations by the trustee.

The District Court terminated the lease and authorized the lessor to reenter upon the premises and to oust the debtor and the trustee. This order followed an order of the Interstate Commerce Commission dismissing an application made by respondent to resume operations of the properties. The application was dismissed because the Commission was of the view that no certificate from it was needed. It ruled that the lessor's "obligations and duties to the public have never ceased but have merely been performed by the lessee for its benefit, and when the latter for any reason no longer can perform such obligations, the duties must be performed by the lessor on its own behalf." 257 I. C. C. 739, 744. And the Commission added, "If and when the lease is terminated and the property reverts to the applicant, it will have no alternative but to resume operation thereof." *Id.,* p. 744.

But that case only held that the lessor needed no certificate of public convenience and necessity under § 1 (18) to operate the road, as, if, and when the lessee or its trustee ceased operations. It did not present the question whether operations by the lessee or its trustee might be abandoned. No application for abandonment of operations by the lessee or its trustee was before the Commission. Authority of a lessor to resume operations if the lessee or its trustee abandons is one thing; authority of the lessee or its trustee to abandon is quite different.

Sec. 1 (18) of the Interstate Commerce Act provides in part:

". . . no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

In *Thompson* v. *Texas Mexican R. Co., post,* p. 134, we held that a company having trackage rights over the lines of another must receive authorization to abandon the operations. That case is, of course, different from the present one because it entailed complete abandonment of operations by one company over another's lines. Here the question is whether the lessee or the lessor shall perform the service. But § 1 (18) provides that "no carrier by railroad" shall abandon "the operation" of all or any portion of a line without a certificate from the Commission. Discontinuance of operations by the trustee is abandonment of operations by a carrier within the meaning of § 1 (18). And a certificate is required under § 1 (18) whether the lessee or the lessor is abandoning operations. See *Lehigh Valley R. Co. Proposed Abandonment of Operation,* 202 I. C. C. 659; *Norfolk Southern R. Co. Receivers' Abandonment,* 221 I. C. C. 258. Whether the public interest requires that the line be operated by the lessee rather than the lessor presents a question for the Commission under § 1 (18) of the Interstate Commerce Act. The lessor is not at the mercy of the lessee in this situation. For the lessor, as well as the lessee, has the standing necessary to invoke § 1 (18) on the question of abandonment. *Thompson* v. *Texas Mexican R. Co., supra.*

The second aspect of the problem is related to the first. It is the function of the Commission under § 77 to prepare the plan of reorganization of the debtor company.

§ 77 (d). As we stated in *Ecker* v. *Western Pacific R. Corp.*, 318 U. S. 448, 468:

> "These reorganizations require something more than contests between adversary interests to produce plans which are fair and in the public interest. When the public interest, as distinguished from private, bulks large in the problem, the solution is largely a function of the legislative and administrative agencies of government with their facilities and experience in investigating all aspects of the problem and appraising the general interest. Congress outlined the course reorganization is to follow. It established standards for administration and placed in the hands of the Commission the primary responsibility for the development of a suitable plan. When examined to learn the purpose of its enactment, § 77 manifests the intention of Congress to place reorganization under the leadership of the Commission, subject to a degree of participation by the court."

The Commission in preparation of the plan is guided not only by the requirements that the plan be fair and equitable and feasible. It is also charged with the duty of preparing a plan that "will be compatible with the public interest." § 77 (d). Whether a leased line should continue to be operated by the lessee or should revert to the system of the lessor may present large questions bearing on the development by the Commission of an adequate transportation system. Interstate Commerce Act § 1. Moreover, it appears in the present case that forfeiture of the lease will deprive the debtor of all of its railroad properties.[3] Whether a particular carrier should go out of

---

[3] The District Court ordered the trustee to turn over to the respondent all of the property held or used for railroad purposes except bank accounts, cash, accounts receivable and the like. Among the property were small lengths of line which the debtor claimed to own in fee but which the respondent asserted should revert to it. The order of the District Court provided that the trustee might file a claim for that property or its value and reasonable compensation for its use.

business presents problems of primary importance to its security holders and perhaps to the public interest as well. If forfeiture of the lease is now declared, no plan of reorganization may be possible. The problem of preparing a plan of reorganization will often present to the Commission decisions concerning the adoption or rejection of leases. The adoption of a lease by the trustee does not preclude rejection of it in the plan of reorganization. § 77 (b). The scheme of the Act is, indeed, to settle in the plan of reorganization the various claims to the property. The Commission may decide that it is in the public interest as well as in the interest of the private claimants that a lease be adopted. If it is adopted, then any defaults under it can be cured.[4] § 77 (b) (5). Or it may conclude, as it did in *Group of Institutional Investors* v. *Chicago, M., St. P. & P. R. Co., supra,* pp. 546–555, that a lease should be rejected unless the lessor consented to a revision of its terms. Or it may conclude that forfeiture of a lease according to the provisions of § 70 (b) would be compatible with the public interest. As we stated in *Palmer* v. *Massachusetts,* 308 U. S. 79, 87, "The judicial process in bankruptcy proceedings under § 77 is, as it were, brigaded with the administrative process of the Commission." And see *Warren* v. *Palmer,* 310 U. S. 132. The point is that if the reorganization court decrees a forfeiture in advance of consideration of the problem by the Commission, it interferes with the functions entrusted to the Commission under § 77. Forfeiture of a lease in accordance with the provisions of § 70 (b) may be wholly consistent with the preparation of a plan of reorganization under § 77. But, as we have said, the nature of the

---

[4] Sec. 77 (b) (5) provides in part, "A plan of reorganization within the meaning of this section . . . shall provide adequate means for . . . the curing or waiver of defaults . . ."

plan of reorganization to be submitted is entrusted primarily to the Commission. If forfeiture of leases can be decreed without prior reference of the matter to the Commission, it may be seriously embarrassed in preparing the plan which it deems necessary or desirable for the reorganization of the debtor.[5] The federal policy embodied in § 77 can prevent enforcement of the engagements of the debtor pursuant to their terms. *Continental Illinois National Bank* v. *Chicago, R. I. & P. R. Co., supra.* Cf. *Otis & Co.* v. *Securities & Exchange Commission,* 323 U. S. 624.

We hold that the District Court erred in declaring the lease forfeited and that the judgment should be reversed and the cause remanded. The District Court should stay its hand pending a decision by the Interstate Commerce Commission on the questions.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[5] *Finn* v. *Meighan, supra,* involved the forfeiture of a lease in reorganization proceedings under Ch. X. But the problem there was not complicated by any provisions of Ch. X giving to an administrative agency the functions entrusted to the Interstate Commerce Commission under § 77. As we stated in *Palmer* v. *Massachusetts,* 308 U. S. 79, 87, ". . . the whole scheme of § 77 leaves no doubt that Congress did not mean to grant to the district courts the same scope as to bankrupt roads that they may have in dealing with other bankrupt estates."