## In re BOSTON TERMINAL CO.
### No. 63870.

District Court, D. Massachusetts.
March 12, 1947.

Robert H. Davison, of Boston, Mass., for Webster & Atlas Nat. Bank of Boston.

Brickley, Sears & Cole, of Boston, Mass., for Boston Terminal Co.

James N. Clark, of Boston, Mass., for trustee of Boston Terminal Co.

George J. Leary, of Boston, Mass., for City of Boston.

George H. Fernald, Jr., of Boston, Mass., for New York Cent. R. Co.

FORD, District Judge.

This petition was originally filed August 22, 1945. On October 15, 1945, this court held a hearing on the petition. No decision was made pending the decision of the Circuit Court of Appeals for the Second Circuit on the appeal by the petitioner, among others, from Judge Hincks' orders of September 6, 1945 approving and confirming the New York, New Haven, and Hartford Railroad Company (hereinafter called New Haven) plan contained in the Sixth Supplemental Report and Order of the Interstate Commerce Commission on May 14, 1945. This procedure was satisfactory to the present petitioner. The orders appealed from were affirmed on January 13, 1947.

Old Colony Bondholders et al. v. New York, New Haven and H. R. Co., 161 F.2d 413. On February 1, 1947, $13,992,000 principal of the Boston Terminal Company (hereinafter called Terminal) bonds became due and have not been paid. No interest has been paid by New Haven on the bonds of Terminal since October 30, 1939 as the result of an order entered by the United States District Court for the District of Connecticut, later reversed by the Circuit Court of Appeals for the Second Circuit, 111 F.2d 215, but sustained by the Supreme Court in Palmer v. Webster & Atlas Nat. Bank, 312 U.S. 156, 61 S.Ct. 542, 58 L.Ed. 642. The New York Central Railroad Company, lessee of the Boston and Albany, still a user of Terminal, has paid its required 30% of the interest on the bonds and this has not been distributed but is being held on order of this court in a special account. Obviously there is a long standing default on the bond interest and the petitioner claims a deficiency will exist on foreclosure of its mortgage as a result of the prolonged litigation, the failure to make the interest payments, and the deterioration of the property.

Under Section 4 of the Massachusetts Act of 1896, c. 516, establishing Terminal, railroads using the terminal are liable in proportion to their use for any deficiency arising from a foreclosure of any mortgage securing the bonds. The Circuit Court of Appeals for the Second Circuit stated in Old Colony Bondholders et al. v. New York, New Haven & Hartford Railroad Co., 2 Cir., 161 F.2d 413, that the New Haven plan did not affect the rights of the bondholders to prove a claim against the New Haven for any deficiency which arose from a foreclosure and that adequate provision was made in the plan to compensate for it. The petitioner states that its purpose in seeking permission to foreclose its mortgage at this time is that it may establish a deficiency and prove its claim for damages resulting from it against the New Haven. (Under the New Haven plan as approved Old Colony will have no assets to satisfy any deficiency judgment and no provision is made for payment of any deficiency claims.)

The debtor, Boston Terminal Company, among others, opposes this petition.

We may assume, as petitioner contends, for the purposes of this motion, that there is no outstanding equity in Terminal. The Commission in 1941 placed a valuation of $7,961,263 on the building and $5,970,330 on the land. The total amount of the bonds issued by Terminal is $15,155,000. Interest unpaid is approximately $4,000,000. These amounts are considerably in excess of the Commission's valuation. There are no other outstanding secured obligations of Terminal and the unsecured obligations are not of sufficient amount to change this picture.

At the outset, it seems apparent that an allowance of the petition to foreclose would result in abandonment of a railroad terminal, a discontinuance of its operations within the meaning of the principles stated in the case of Smith v. Hoboken R. Co., 328 U.S. 123, 130, 66 S.Ct. 947, and at the same time destroy any chance of reorganization of Terminal. Whether Terminal or any particular carrier should go out of business is a matter of public interest. Smith v. Hoboken R. Co., supra, 328 U.S. at page 132, 66 S.Ct. 947. Under Section 1(18) of the Interstate Commerce Act, hereinafter referred to as the Act, 49 U.S.C.A. § 1(18), " * * * no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." Carriers being reorganized under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, are not exempt from that provision. Section 1 (18) embraces operations conducted by Terminal and its trustee. Abandonment need not involve a sale. Any discontinuance of operations by the party presently operating seems to be an abandonment under the doctrine of the cases of Smith v. Hoboken R. Co., supra, and Thompson v. Texas Mexican R. Co., 328 U.S. 134, 66 S.Ct. 937. Discontinuance of operations by a trustee is abandonment of operations by a carrier within the meaning of Section 1(18) of the Act. Smith v. Hoboken R. Co.,

474

supra, 328 U.S. at page 130, 66 S.Ct. 947. In the Hoboken case a lessor was granted the right by the lower court to terminate a lease over its lines of railroad because of the presence of a forfeiture clause in the lease. The Supreme Court held that this was an abandonment of operation by the lessee and its trustee even though the trustee took no part in the proceedings. The court made it plain that before it could be done a certificate should have been obtained from the Commission in accordance with the requirements of Section 1(18) of the Act. In the Texas Mexican case the court held that a company having trackage rights over the lines of another must receive authorization to abandon its operations. In that case the trackage agreement was terminated by the grantor in accordance with a termination clause after the reorganization proceedings had begun. The trustee took no part in the termination. In both these cases abandonment of the operation of the carrier was attempted without any active step taken by the trustee. Discontinuance of operation was forced on the carrier from without. Here we have a case that appears to be a parallel one to these cases. The mortgagee here is in the same position of the lessor in the Hoboken case and the grantor in the Texas Mexican case. Discontinuance of operation by the trustee would be forced on him by foreclosure proceedings. Such a discontinuance would be an abandonment of operations by a carrier within the meaning of Section 1(18) of the Act and the cases cited. Section 1(18) was evidently enacted for the protection of the public which has a paramount interest in the continuance of a particular carrier's operations. Whether the public interest requires that the South Station Terminal be operated by Terminal or its trustee rather than by the mortgagee or a purchaser presents a question for the Commission under Section 1(18) of the Interstate Commerce Act. Smith v. Hoboken R. Co., supra, 328 U.S. at page 130, 66 S.Ct. 947. It is my opinion that before this petitioner can foreclose and discontinue operations by the Terminal trustee, a certificate under Section 1(18) of the Act should be obtained from the Commission.

■ There remains another important aspect of the problem under consideration. It may be put in this form: Should the petitioner's mortgage be foreclosed pending the reorganization proceedings? Obviously, if it is, it would prevent the formulation and consummation of any plan of reorganization for Terminal. In the Continental Illinois National Bank & Trust Co. of Chicago v. Chicago, R. I. & P. R. Co., case, 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L. Ed. 1110, the court stated, "But a proceeding under section 77 * * * is not an ordinary proceeding in bankruptcy. It is a special proceeding which seeks *only to bring about a reorganization,* if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the *sole* aim of the section, and thereby to render its provisions futile." (Emphasis supplied). The section contemplates an adjustment of a debtor's obligation and the Commission has the primary responsibility for formulating a plan of reorganization "compatible with the public interest" under Section 77, sub. d. As the court stated in Ecker v. Western Pacific R. Corp., 318 U.S. 448, 468, 63 S.Ct. 692, 705, 87 L.Ed. 892: "Congress outlined the course reorganization is to follow. It established standards for administration and placed in the hands of the Commission the primary responsibility for the development of a suitable plan. When examined to learn the purpose of its enactment, Section 77 manifests the intention of Congress to place reorganization under the leadership of the Commission, subject to a degree of participation by the court." Cf. Gardner v. State of New Jersey, 67 S.Ct. 467, 473. Under Section 77(b) (1) a plan of reorganization can modify or alter "the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise".

■ No plan of reorganization has as yet been certified to the court in the Terminal proceedings by the Commission and since, as stated in Palmer v. Commonwealth of Massachusetts, 308 U.S. 79, 87, 60 S.Ct. 34, 38, 84 L.Ed. 93, the authority of the

court is "brigaded with the administrative process of the Commission", it seems to this court, in the light of what has been said, that no action should be taken on the present petition at this time.

An order will be entered denying without prejudice the petition to modify the injunction of November 29, 1939.