In the Matter of **FLEETWOOD MOTEL CORPORATION**, Debtor.

Joseph F. Bradway, Trustee under the Will of Edward H. Bradway, Sr. for a 75/300ths interest and Trustee under the Will of Ella R. Elwell for a 75/300ths interest, Barbara J. Sankey, Custodian for minors, Joseph F. Bradway, Jr. for a 10/300ths interest, Linda L. Bradway for a 10/300ths interest, Corinne J. Bradway for a 10/300ths interest, and Camille M. Bradway for a 10/300ths interest, and Bernard W. Capaldi, Trustee under Deed of Trust of John M. Sankey, dated April 30, 1957 for a 25/300ths interest, and Trustee under Deed of Trust of William F. Lawless, Sr. and Carol B. Lawless dated April 30th, 1957 for a 25/300ths interest, and Trustee under Deed of Trust of Joseph F. Bradway, Sr. dated March 5, 1938 for a 60/300ths interest, Appellants.

In the Matter of **FLEETWOOD MOTEL CORPORATION**, Debtor.

Jack G. Kolman, Trustee, Appellant.

Nos. 14667, 14669.

United States Court of Appeals Third Circuit.

Argued April 6, 1964.

Decided Aug. 6, 1964.

As Amended Sept. 2, 1964.

858

See also 3 Cir., 335 F.2d 863.

John Lloyd, Jr., Atlantic City, N. J., for appellants Joseph F. Bradway, Barbara J. Sankey and Bernard W. Capaldi (Lloyd, Horn, Megargee & Steedle, Atlantic City, N. J., on the brief).

Neil F. Deighan, Jr., Camden, N. J., for appellant Jack G. Kolman.

David Ferber, Assoc. Gen. Counsel, Securities and Exchange Commission, Washington, D. C., for SEC (Richard V. Bandler, Asst. Regional Admr., Richard L. Veron, Atty., SEC, New York City, Philip A. Loomis, Jr., Gen. Counsel, Donald R. Jolliffe, Atty., SEC, Washington, D. C., on the brief).

Before STALEY, HASTIE and GANEY, Circuit Judges.

STALEY, Circuit Judge.

These cross appeals are from an order entered by the district court in reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–676 (1958 ed). The district court affirmed two orders of the referee in bankruptcy, one denying the petition of the

debtor's landlord, Joseph F. Bradway,[1] for possession of premises leased to the debtor, and the other granting the petition of the debtor's trustee for the imposition of an equitable lien on the leased premises but denying the other relief sought by the trustee. Both the landlord and the trustee have appealed, and the Securities and Exchange Commission, a party to this reorganization proceeding under § 208 of Chapter X, 11 U.S.C. § 608, has filed a brief in support of that portion of the order denying the landlord's petition for possession of the premises.

On September 26, 1958, the debtor, Fleetwood Motel Corporation, and the landlord's predecessor in interest entered into an option agreement for the lease of premises at 3100 Boardwalk, Atlantic City, New Jersey. The salient terms of the option acknowledged the desire of Fleetwood to secure a 99 year lease of the premises provided it could secure the necessary financing for the construction of a hotel and improvements thereon; required Fleetwood, upon the exercise of the option, to construct a hotel or motel consisting of 125 bedrooms and 125 private baths, a restaurant, cocktail lounge, coffee shop, swimming pool, elevator, five stores and parking facilities; and included an agreement on the part of the lessor to subject the land and subordinate the lease to a 10 to 15 year mortgage not to exceed 75 per cent of the actual construction cost of the buildings referred to, provided Fleetwood first expended $250,000 of its own funds for construction costs before using any of the proceeds of the mortgage. The latter provision also required that the plans and specifications for the hotel or motel be submitted to and approved by the lessor. The penultimate paragraph of the agreement provides:

"Party of the second part [Fleetwood] expressly agrees that if it re-

ceives a mortgage commitment pursuant to its application, and provided further that it secures the consent of the S.E.C. and is successful in raising at least fifty (50%) per cent of the amount to be secured by public subscription, that it shall then be deemed to have exercised this option and will thereupon execute the lease attached hereto and will perform all the terms and conditions contained in this agreement and in said lease."

The lease attached to the option agreement contains many of the same terms and conditions. Rent is therein specified at $40,000 per year payable on the 1st of October of each year with Fleetwood obligated to pay as additional rent all taxes assessed against the real and personal property, water rents, sewer charges, and any other levies on the property.[2] The lessor retains the right to cure any default under the mortgage and a default under the mortgage not cured within thirty days is deemed a default under the lease. Upon the expiration of the term, Fleetwood is required to surrender and deliver up to the lessor not only the premises but the improvements, furniture and furnishings contained therein. That clause of the lease critical to the determination of these appeals is paragraph 17, which provides in relevant part:

"If the Lessee shall fail to pay within fifteen days after the same shall become due and payable and after notice to the Lessee, any installment of rent, or additional rent reserved hereunder, taxes, water and sewer, insurance premiums or principal or interest under the mortgage upon the demised premises, * * * or if any petition or proceeding under the provisions of the Act of Congress relating to bankruptcy has been filed by or against the Lessee in possession and such petition or pro-

---

1. The petition was actually filed by Bradway and another individual as trustees representing various persons having an interest in the property in question. However, for purposes of clarity and to avoid confusing the trustee of the debtor-lessee with these trustees, we shall refer to the latter in this opinion as the landlord.

2. The lease also contains a provision for additional rent computed by a formula based upon a commodity index published by the United States Department of Labor.

ceeding is not dismissed within sixty days, or if the Lessee in possession shall make an assignment for the benefit of its creditors, or if a Receiver or Trustee be appointed of the property of the Lessee in possession and such Receiver or Trustee be not discharged within sixty days after his appointment, * * * then this lease shall be terminated and void, the Lessors shall have the right to enter into and upon the demised premises for any part thereof and to repossess and enjoy the same as in and by its former estate * * *."

The option was exercised and the lease signed on October 1, 1958. A six-story, 129-room motel known as La Concha was therafter constructed, and it commenced operations in June 1959. Shortly thereafter financial difficulties arose in the operation of the motel, and the debtor instituted these reorganization proceedings on September 27, 1960. The landlord then filed with the referee in bankruptcy a petition for permission to take possession of the property. In denying that petition the referee made the following findings, which are not disputed except for those relating to his valuation of the property:

"Fleetwood erected a six-story motel on the premises with 129 rooms and baths, stores, and facilities and a swimming pool. The cost of the construction was $1,274,-553.29. In addition, Fleetwood installed furniture and fixtures on the premises at a cost of $276,566.23. The motel commenced operation in June 1959. As of January 31, 1962, two-and-one-half years later, the depreciated cost of the building is $1,-192,238.38, and the depreciated cost of the furniture and fixtures is $206,460.19 or a total present book value of $1,398,698.57.

"The mortgage placed on the real estate by Fleetwood was originally $800,000.00 payable in 10 years. This mortgage has been reduced to $560,000.00 and in addition Bradway had advanced on account of the mortgage principal and interest and taxes, the sum of $62,942.79. In effect, therefore, there is due on the mortgage $622,942.79. As of January 31, 1962, there was due $108,-405.97 to conditional sales vendors on the furniture and fixtures. (I have heretofore held hearings to determine the sums due them as secured creditors commensurate with the value of the security. That issue, however, is not involved in the issue now before me which is—shall the landlord have possession of the assets.)

"Fleetwood did invest far more than the $250,000.00 in the erection of the building as required by the agreement to lease and by the lease. In order to raise a large portion of the funds necessary to erect the building and equip it, stock was sold by public offering after compliance with regulations of the United States Security Exchange Commission. The value of such shares is $118,867.77. In addition, capital contributed in excess of par value of the common stock was $179,913.28. Also in addition to the sale of stock and capital contributions in excess of the stock, Fleetwood sold debentures in the sum of $274,700.00. The total of all of these sums is $573,481.05. After the motel commenced doing business, it incurred trade accounts payable of $74,673.-87; unpaid construction costs of $68,435.00; Withholding Taxes; Atlantic City Treasury Taxes, and debts to others. I realize these claims do not come ahead of the secured claims, but set them forth to show the entire financial picture.

"Bradway knew public offering of stock was going to be made. They knew that the principal officers of Fleetwood were not handling the transaction for themselves as the true owners.

"The motel ran into difficulty right from the beginning. The work was not completely finished in June

1959, when the motel opened. Leaks developed in the building and various other defects occurred. Management was not the best and it is evident that much man power was wasted.

"A *mortgage installment of $27,-000.00 fell due on August 31, 1960,* and Bradway gave notice to Fleetwood on September 17, 1960, that it would terminate the lease if Fleetwood did not make payment of the $27,000.00 within fifteen days of the notice. Fleetwood paid a part of the sum on September 26, 1960, leaving $8,081.68 unpaid. Then on September 30, 1960, Fleetwood failed to pay $26,000.00 plus interest on the mortgage, which sum was also then paid by Bradway on October 28, 1961 in the sum of $26,782.76.

"On November 1, 1960, Fleetwood failed to pay Bradway the $40,-000.00 rent which then became due.

"On December 1, 1960, Fleetwood failed to pay mortgage interest in the sum of $9,947.67. This sum was then paid by Bradway to the mortgagee on February 17, 1961.

"Fleetwood failed to pay taxes due on November 1, 1960 and Bradway paid the sum due. The trustee has since repaid a portion of that sum to Bradway whereby there is now due Bradway for taxes advanced, the sum of $8,130.68.

"The *above sums paid out by* Bradway are included in the total figure of $622,942.79 due on the mortgage.

"Bradway asserts that the lease terminated 15 days after September 17, 1960, which would be on October 2, 1960, and that they are entitled to possession of the premises from that date.

"However, *on September 27, 1960,* a petition was filed by Fleetwood, under the provisions of Chapter X of the Bankruptcy Act, for reorganization of the corporation. On that date, Jack G. Kolman was appointed trustee of the corporation.

"The trustee, since his appointment, has operated the motel in a most satisfactory manner. He has repaid Bradway part of the taxes which they advanced; he has made payments on account of the mortgage principal and interest; and he has paid Bradway $40,000.00 for the use and occupation of the motel.

"The trustee has filed a plan of reorganization with the Court, but it cannot be acted upon until such time as all questions relating to the amount due secured creditors, such as conditional vendors and also the builder who claims a lien on the real estate in a sum of approximately $65,000.00 is determined. Only recently has the amount due conditional vendors been established and within the near future the question as to whether the builder is a lien claimant will be ready for disposition."

■ The referee, citing Smith v. Hoboken Railroad, Warehouse and Steamship Connecting Co., 328 U.S. 123 (1946), 66 S.Ct. 947, 90 L.Ed. 1123, 168 A.L.R. 497, denied the petition, reasoning that forfeiture of the lease would entitle the landlord to not only the premises but the motel and the other improvements and furnishings despite the fact that, as pointed out above, the landlord in preparing the lease acknowledged that a very substantial public investment in the debtor corporation was contemplated as a means of partially financing the enterprise. Indeed, as noted by the referee, $573,481.05 was realized from the sale of stock and debentures sold to the public after these securities were first registered with the SEC. In this setting, he held that "forfeiture of the lease should not be declared, at least until a plan of reorganization is submitted and acted upon, and particularly so in this case where it appears that the reasoning of Smith v. Hoboken should be followed." The referee further ruled that, sitting as a court of equity and applying the law of New Jersey to the contractual provisions of the lease, the forfeiture clause would

not be enforced. The district court affirmed, stating that "when you are dealing with the rights of creditors in what you might term a bankrupt estate, when you are dealing with stockholders to the extent that we have in this case with the SEC supervising their rights, it seems to this court that, sitting as a court of equity, it would be unconscionable to allow repossession here. It would constitute in the law a forfeiture. So that the court will sustain the holding of the referee denying Bradway the right of re-entry to take possession." [3] We agree with both the reasoning and the conclusion of the referee and the district court.

■ The appeal of the landlord is based upon the declaration in § 70, sub. b of the Bankruptcy Act that "an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable." 11 U.S.C. § 110, sub. b (1958 ed.). The applicability of this section to reorganization proceedings under Chapter X making a covenant like the one in the case at bar enforceable in such proceedings was conclusively established by the Supreme Court in Finn v. Meighan, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945). And in this Circuit see, In re Technical Marine Maintenance Co., 169 F.2d 548 (C.A.3, 1948). But less than one year following its decision in Finn, the Court made it clear that the question of the enforceability of such a covenant is separate and distinct from the question of whether enforcement in a particular case would be consistent with other provisions of the Bankruptcy Act. Smith v. Hoboken Railroad, Warehouse and Steamship Connecting Co., 328 U.S. 123, 66 S.Ct. 947. In that case the Court held that § 70, sub. b is also applicable to railroad reorganizations. But because of the great public interest, represented there by the Interstate Commerce Commission, in the forfeiture of a lease of a railroad line

and because forfeiture would preclude the formulation of any plan of reorganization, the Court ruled further that the district court had erred in declaring the lease forfeited.

■ We think that the rationale of Smith, coupled with the inherent equity powers of a court of bankruptcy, see McDonnell v. Bucks County Farms, Inc., 334 F.2d 763, 766 (C.A.3, 1964), provide abundant support for the conclusion of the district court in the case at bar. For here the public, represented by the Securities and Exchange Commission, has invested over a half million dollars in the debtor corporation. And obviously no plan of reorganization could be formulated if forfeiture were permitted, for the property which the landlord would obtain by such action is the only property of the debtor. Moreover, we have already recited in detail the factual circumstances attending the execution and operation of this lease, as well as the obligations contained therein. We shall not repeat them here. Suffice it to say that they amply warranted the exercise of the equitable power of the bankruptcy court to deny the landlord's petition for possession of the premises.

These very facts also distinguish this case from In re Technical Marine Maintenance Co., 3 Cir., 169 F.2d 548, which is relied upon by the landlord. Furthermore, no question was raised in that case as to the power of a court of equity to refuse enforcement of a forfeiture clause in appropriate circumstances.

The referee also entered a conditional order imposing an equitable lien in favor of the trustee upon the land and building to the extent of the improvements in the event reorganization fails or the landlord is finally held to be entitled to possession of the premises. The district court affirmed, and the landlord has appealed. But in view of our disposition, neither of the conditions upon which this alternative order was premised has been met. Hence, a decision on this question by this court at this time would be premature.

3. The opinion of the district court was delivered orally from the bench.

In this regard, the trustee appeals from the same order of the district court affirming the referee's decision granting his request for an equitable lien but denying the additional extraordinary relief he requested. In his counter petition the trustee sought title to the premises on a variety of theories. These included requests for an order declaring that the landlord holds title to the land and building as constructive trustee for the benefit of the debtor; permitting the trustee to redeem the land and building upon payment of the mortgage and the value of the land and making restitution to the landlord; and, finally, "admeasuring and determining the value of the freehold and, upon payment of the value thereof and making restitution to the lessors, Joseph F. Bradway, Trustee, etc., et al., adjudging and declaring that title to the land and building is vested in Jack G. Kolman, Trustee for the estate of Fleetwood Motel Corporation, and cancelling said lease agreement." Unfortunately for the trustee, the case authority supporting his requests is as tenuous as his theories are ingenious. Indeed, we have found no case which would warrant granting such extraordinary relief and we agree with the district court which reached the same conclusion.

A further word is necessary concerning the need for the prompt filing of a feasible plan of reorganization. It has now been almost four years since the debtor instituted these reorganization proceedings and a trustee was appointed. As of April 7, 1964, principal amortization payments on the mortgage were in default $120,000, and the mortgagee has pending before the referee in bankruptcy a petition to dismiss the debtor's petition for reorganization and for leave to foreclose the mortgage. The trustee answers the landlord's assertion of an unreasonable delay with the argument that the formulation of a feasible plan is contingent on our rulings both on the forfeiture question and on the mechanics' lien claims involved in the companion appeals decided today in 335 F.2d 863. But in view of our disposition of these matters, no reason whatsoever any longer exists for the failure to promptly file an acceptable plan which, of course, shall include proper financing of the enterprise. Accordingly, if such a plan is not filed within ninety days from the date this opinion is filed, the district court shall re-examine the forfeiture question.

That portion of the order of the district court denying the landlord's petition for permission to take possession of the property and denying the relief requested in the trustee's counter petition will be affirmed. The cause will be remanded for further proceedings in accordance with this opinion.