**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY**

v.

**CITY OF ALEXANDRIA, LOUISIANA; W. George Bowden, Jr., Mayor of the City of Alexandria; William H. Lambdin, Commissioner of Streets and Parks of the City of Alexandria; Leroy G. Wilson, Commissioner of Finance and Utilities of the City of Alexandria; and Grady L. Kelley, Jr., Sheriff of Rapides Parish, Louisiana.**

Civ. A. No. 8340.

United States District Court
W. D. Louisiana,
Alexandria Division.

Dec. 11, 1961.

**4**

HUNTER, District Judge.

Plaintiff seeks a permanent injunction enjoining and restraining the sale of land forming a portion of plaintiff's main line in interstate commerce running into and out of Alexandria, Louisiana to Eunice, Louisiana.

On June 23, 1961 this Court temporarily restrained the City of Alexandria from selling the property involved. It was later agreed that this restraining order should be continued in force and effect until the Court ruled on the request for a permanent injunction.

The matter in controversy, excluding interest and costs, exceeds the sum of $10,000. Jurisdiction exists under the provisions of the Judicial Code of the United States because the parties are citizens of different states (28 U.S.C.A. § 1331). This Court also has jurisdiction to prevent an abandonment of a railroad line whenever the abandonment is to be made without the authority of the Interstate Commerce Commission (49 U.S.C.A. § 1(20)).

The facts which are not in serious dispute are essentially these:

1. Plaintiff is a non-resident of the State of Louisiana, and defendants are residents of the State of Louisiana.

2. The amount in controversy exceeds $10,000, excluding interest and costs.

3. Plaintiff is a common carrier by railroad operating over a system extending through fourteen (14) states, including the States of South Dakota, Minnesota, Iowa, Illinois, Missouri, Kansas, Nebraska, Colorado, Tennessee, Arkansas, Oklahoma, Texas, Louisiana and New Mexico, with headquarters in Chicago, Illinois. Plaintiff is a common carrier of both passengers and freight on its railroad system and through a system of inter-change arrangements with other railroad lines.

4. Plaintiff's main line in Louisiana is interconnected with its railroad system at Little Rock, Arkansas, and extends south through Alexandria, Louisiana to Eunice, Louisiana. Plaintiff's principal interconnections with other railroad lines along this segment of plaintiff's railroad system are the following: Missouri Pacific at Little Rock; St. Louis Southwestern at Little Rock, Arkansas; the Bauxite and Northern at Bauxite, Arkansas; Missouri Pacific at Benton, Arkansas; Fordice and Princeton and the St. Louis Southwestern at Fordice, Arkansas; the Warren and Saline River Valley at Hermitage, Arkansas; the Arkansas & Louisiana Missouri and the Ashley, Drew and No. at Crossett, Arkansas; Missouri Pacific, El Dorado and Wesson at El Dorado, Arkansas; Illinois Central at Winnfield, Louisiana, the Illinois Central at Ruston, Louisiana; the Louisiana and Arkansas at Winnfield, Louisiana; the Texas & Pacific, the Missouri Pacific, Southern Pacific, and the Louisiana and Arkansas at Alexandria, Louisiana; and the Missouri Pacific and the Southern Pacific at Eunice, Louisiana. Plaintiff maintains lines, depots, stations, operating facilities and equipment along the entirety of its Little Rock-Eunice line, and employs personnel to operate the line through its entirety.

5. Plaintiff operates and furnishes transportation as a common carrier along

its entire main line in Louisiana, but is not a common carrier of passengers in Louisiana. As a common carrier of freight on its Little Rock-Eunice line, plaintiff operates and handles interstate freight shipments as an intermediate carrier, an originating carrier, and a terminating carrier. Such shipments are handled by plaintiff both at Alexandria, Louisiana and at Eunice, Louisiana, and along plaintiff's line between Alexandria, Louisiana and Eunice, Louisiana.

Plaintiff operates regularly scheduled trains on its Little Rock-Eunice main line. Plaintiff operates trains between Eunice and Alexandria, Louisiana, including a regularly scheduled round trip between Alexandria and Eunice, Louisiana daily except Sunday.

6. The City of Alexandria and its named commissioners under authority of a judgment in rem, dated January 9, 1961, in the matter entitled "City of Alexandria vs. Chicago, Rock Island and Pacific Railroad Company," numbered 51,614 on the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, which judgment as affirmed by the Supreme Court of Louisiana, 240 La. 1025, 126 So.2d 351, on January 9, 1961 has become final, caused to issue to defendant, Grady L. Kelley, Jr., Sheriff of Rapides Parish, Louisiana, a writ of Fieri Facias, under which the Sheriff has seized and proposes to sell at public sale the following property belonging to plaintiff, to-wit:

a. A tract of land bounded on one side by the property of W. Patrick Aertker and Charles S. Prosser and on the other side by the Brown-Roberts Hardware and Supply Company, Ltd., fronting 212.55 feet on Broadway Avenue.

b. A tract of land bounded on one side by New York Avenue and on the other side by property of the Louisiana and Arkansas Railway company, fronting 2,533.44 feet on Broadway Avenue.

7. A portion of plaintiff's main line railroad into and out of Alexandria, Louisiana to Eunice, Louisiana is constructed, located and situated on the strips of land described in Paragraph 6 above. Plaintiff has no other route or alternative route from Alexandria to Eunice, Louisiana.

8. Plaintiff has made no application to the Supreme Court of the United States to review the decision of the Louisiana Supreme Court.

9. No application has been made to the Interstate Commerce Commission for the abandonment of that portion of plaintiff's main line constructed, located and situated on the property described in Finding 6.

10. The judgment of the City is in rem. Plaintiff is not indebted otherwise to the City of Alexandria nor to any of the other defendants, but plaintiff is owner of the property described in Finding 6.

11. Plaintiff does not deny the validity of the paving liens. Plaintiff does not deny the City's right to enforce its liens and to sell the properties if abandonment of that portion of its main line were to be authorized by the Commission.

12. All of the documents in Suit No. 51,614 of the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana, entitled "City of Alexandria vs. Chicago, Rock Island and Pacific Railroad Company," have been received in evidence and are made a part hereof, including the writ of Fieri Facias; and the public advertisement of the proposed sale.

Plaintiff's position is that the proposed sale would accomplish an abandonment of its main line; that the Commission has exclusive jurisdiction to authorize such an abandonment and that the proposed sale and abandonment cannot be effected without prior authority of the Interstate Commerce Commission; and that such abandonment would cause irreparable damage and injury to the plaintiff and to the public in general.

Counsel have not cited, and we have not been able to find, where the precise issue has ever previously been resolved. The Supreme Court, in the Choctaw

case,[1] held categorically that "street paving is a class of betterment to which the railroad right of way and station property is generally held to be subject." In Choctaw, the defendant railroad urged that "if the assessment is left unpaid, a sale to enforce the lien would sever an integral part" of the right-of-way. The Court held that an assessment against a railroad right-of-way for a street improvement cannot be declared void because the effect of a sale to pay the assessment would result in the severance of an integral part of the right-of-way. They declined to discuss the methods and means that a lienholder was to pursue in enforcing the lien against a railroad in instances where interstate commerce would be affected, and disposed of the railroad's contention in these words:

"If the validity of the assessment is established, it may be assumed that due payment will follow. At all events, we have no occasion to deal with the method and means to be pursued in enforcing it."

Perhaps the Supreme Court's assumption was correct and payment followed, but payment has not followed here. Necessarily, we must resolve whether a valid lien holder can sell railroad beds over which trains run in interstate commerce in the absence of approval by the Interstate Commerce Commission. The resolution of this issue requires us to make added findings which we now proceed to do:

■ 13. Under the facts the sale of property upon which these tracks run would in effect constitute an abandonment. This abandonment stems from the substantial diminution in the ability of the railroad to discharge its responsibility inherent in its interstate operation. To permit the sale of this property without safeguarding the area reserved for tracks would be the removing of one link

from the connecting chain. The result would inevitably be the abandonment or discontinuance of a portion of the railroad's line or operation in the interstate field. City of Des Moines v. Chicago & Northwestern Railway Co., 8 Cir., 264 F. 2d 454; Thompson v. Texas Mexican Railway Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132; Smith v. Hoboken Railroad, Warehouse & Steamship Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946).

14. This abandonment would cause plaintiff irreparable injury and damage in that it would:

(a) Disrupt plaintiff's operations.

(b) Interrupt and prevent the transportation of goods and commodities in interstate commerce required of plaintiff under the provisions of the Interstate Commerce Act.

(c) Subject plaintiff and its officers to the threat of fines and penalties for failure to provide the services required under the provisions of the Act, and

(d) Subject plaintiff to the threat of innumerable suits for damages for failure to provide such services.

■ Under the facts hereinabove set forth, the provisions of the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.) afford a conclusive answer. The provisions of 49 U.S.C.A. § 1(18) are absolute.[2] There is no requirement that the application be made by the carrier whose operations are sought to be abandoned. It has been recognized that persons other than carriers who have an interest in the matter may take the initiative (Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132). The proposed sale would constitute an abandonment; no certificate has been obtained; plaintiff and the public would suffer irreparable damage if there were an abandonment; plaintiff is very much an interested party. It necessarily

---

1. Choctaw O. & G. R. Co. v. Mackey, 256 U.S. 531, 41 S.Ct. 582, 65 L.Ed. 1076 (1920).

2. "No carrier * * * shall abandon all or any portion of a line of railroad * * * unless and until there shall first have been obtained from the Commission a certificate * * * *."

follows that plaintiff is entitled to a permanent injunction.[3]

This Court has enjoined this sale only as advertised. We feel it necessary to state that the injunction will be so worded that the City of Alexandria will not be left impotent in its desire to enforce its paving lien. The City clearly has two methods available to it. First, it can ask the Interstate Commerce Commission's permission to permit the abandonment of that portion of the railroad's main line upon which the lien has attached. Secondly, the City is free to advertise and sell all the land exclusive of a 20-foot strip over which the tracks run. The Supreme Court of Louisiana in this very case (City of Alexandria v. Chicago, Rock Island & Pacific R. Co., 240 La. 1025, 126 So.2d 351 (1961)) noted:

"The record discloses that the property of the defendant is assessed in the sum of $38,530.85. The value of the property is $78,500, exclusive of a 20 foot strip for defendant's tracks. The strip of land between the center of defendant's track and the edge of the pavement on Broadway Avenue is 75 feet in width, and the strip of land between the center of defendant's tracks and New York Street, which borders defendant's property on the east, is 50 feet in width. Experts testified that the defendant's property between Broadway Avenue and the railroad track is an excellent site for warehouses and other business establishments."

## CONCLUSION

For the reasons assigned, the injunction is made permanent. It should be crystal clear that I deem it necessary to enjoin the City of Alexandria from selling the property as advertised because the sale as advertised would result in the sale of the roadbed (the actual tracks over which the train operates). The decree is to specifically "spell out" that the City is not enjoined from selling the railroad's property, exclusive of a 20-foot strip for defendant's tracks.

Proper decree should be submitted.

---

3. "Any * * * abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of * * * any party in interest * * *." 49 U.S. C.A. § 1(20).