515 F.2d 913
 In the Matter of FONTAINEBLEAU HOTEL CORPORATION, Debtor.
PENNSYLVANIA REAL ESTATE INVESTMENT TRUST, Appellant,
v.
FONTAINEBLEAU HOTEL CORPORATION and Warren M. Simon,
Trustee, Appellees.
 No. 74-4205.
 United States Court of Appeals,
Fifth Circuit.
 July 11, 1975.
 
 Robert E. Winn, Robert E. Barkley, Jr., New Orleans, La., for appellant.
 Edward J. Boyle, Jr., Peter J. Butler, New Orleans, La., for Trustee Simon.
 Edward M. Heller, New Orleans, La., for Trustee Miller.
 Lee C. Grevemberg, New Orleans, La., for Fontainebleau Hotel Corp.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 This Chapter X reorganization petition of Fontainebleau Hotel Corporation was filed on August 1, 1974. On the same day, the district court issued an order appointing a trustee and placing him in possession of the business and property of the debtor. The court also enjoined all persons from interfering with the possession by trustee of the debtor's business and property during the pendency of this proceeding. The court's order stated that "all persons, firms or corporations owning any lands or buildings occupied by said debtor or said trustee or wherein is contained any property of the within estate be, and they hereby are, jointly and severally, stayed, pending the further order of this court, from removing or interfering with any such property." Shortly thereafter, on August 8, 1974, Pennsylvania Real Estate Investment Trust filed a motion to rescind the court's original order and a motion for possession of the leased premises, including all movables and immovables located thereon.
 
 
 2
 An evidentiary hearing was held, and the district court issued its order on October 25 which denied PREIT's motion for possession and also held that under 11 U.S.C. § 544 the debtor's reorganization petition had been filed in good faith. PREIT then brought this appeal.
 
 
 3
 Fontainebleau Hotel Corporation is engaged in the hotel business in New Orleans, Louisiana, and subleases the hotel premises, including the furniture, fixtures and equipment, from Pennsylvania Real Estate Investment Trust. According to the terms of the sublease, if the hotel corporation defaults in payment of rent, PREIT may give sublessee five days' notice of intention to terminate and at the expiration of that period the sublease shall terminate.
 
 
 4
 The hotel became substantially delinquent in payment of rent and on July 22, 1974, PREIT gave the debtor corporation written notice of default and of intention to terminate the sublease on July 27, 1974. On July 30, 1974, PREIT delivered written notice to the debtor corporation to vacate the premises and deliver possession to it. Thereafter, as previously stated, this petition for corporate reorganization was filed on August 1, 1974. PREIT contends that the lease had terminated prior to the filing of the corporate reorganization proceeding and that it is entitled to possession because the trustee had no right or interest in possession of the leased premises.
 
 
 5
 We are unable to agree with this contention. The law of Louisiana requires legal proceedings against a delinquent lessee and a judgment of the proper court before possession may be obtained. Thus the cancellation of the lease for nonpayment of rent is not effective until a court has ordered termination and granted possession. See Edwards v. Standard Oil Co. of Louisiana, 175 La. 720, 144 So. 430 (1932); Lemoine v. Devillier, La.App., 3 Cir., 189 So.2d 694 (1966); Louisiana Materials Co. v. Cronvich, La.App., 4 Cir., 236 So.2d 510 (1970). No judicial proceedings having been instituted in this case prior to the filing of the petition for corporate reorganization, the trustee succeeded to the possession of the debtor upon his appointment by the district court.
 
 
 6
 It was within the equity power of the district court, under the circumstances here, to decline forfeiture of the lease and continue the trustee in possession. Reorganization of the hotel would not be possible if the trustee were deprived of possession of the hotel premises, furniture and equipment. Necessarily any opportunity which the creditors might have to recover would be substantially impaired, if not lost altogether.
 
 
 7
 The authorities support the district court's finding that though a debtor corporation may be in default in the payment of rent under a lease, the reorganization court may nevertheless deny lessor's motion for immediate possession of the premises. Though differing on its facts from the present case, Smith v. Hoboken R. R., Warehouse & S. S. Connect. Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946) is still applicable in principle. In that case the Supreme Court declined to permit a forfeiture of the debtor's lease which would (as here) have prevented the possibility of reorganization. Three circuits have, on the basis of Smith, declined to order the forfeiture of possession for breach of the lease involved in these cases. No circuit decision is to the contrary. See In re Fleetwood Motel Corporation, 3 Cir., 1964, 335 F.2d 857; Weaver v. Hutson, 4 Cir., 1972, 459 F.2d 741, cert. denied, 409 U.S. 957, 93 S.Ct. 288, 34 L.Ed.2d 227 (1973); and Queens Boulevard Wine & Liquor Corp. v. Blum, 2 Cir., 1974, 503 F.2d 202. We align ourselves with the principles set forth in these decisions. Finn v. Meighan, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945), relied upon by PREIT, is not to the contrary.[1]
 
 
 8
 In Queens Boulevard, the Second Circuit approved the rationale of Fleetwood and Weaver, stating:
 
 
 9
 The purpose of a Chapter XI arrangement, as with a Chapter X reorganization, is to preserve a viable business enterprise where possible and especially when that will be in the "best interest of . . . creditors." 11 U.S.C. § 766 (1970). See In re Peoples Loan & Investment Co., 410 F.2d 851 (8 Cir. 1969). Cf. 9 Collier, Bankruptcy P 9.17, at 281 (14th ed. 1972). In determining whether to enforce the lease termination here, therefore, we must consider not only the interests of the landlord but also those of the debtor and its creditors. Possession by Queens will not prejudice Carol, which is protected by a sizeable security deposit, except to deny it a windfall in the form of increased rent to which we hold it is not equitably entitled. Enforcement of the forfeiture, on the other hand, would destroy a now profitable debtor by depriving it of its most valuable asset its location. It also would needlessly injure trade creditors and those outside investors who have furnished capital which has resulted in Queens' rehabilitation. In our view, these individuals stand on no less significant a footing than did the shareholders of the debtors in Weaver and Fleetwood.
 
 
 10
 Our decision clearly is distinguishable from and in no way inconsistent with those cases which have upheld a termination clause such as that in the instant case. E. g., Finn v. Meighan, supra, 325 U.S. at 301 (65 S.Ct. 1147, 89 L.Ed. 1624); Model Dairy Co., Inc. v. Foltis-Fischer, Inc., 67 F.2d 704, 706 (2 Cir. 1933). Cf. B. J. M. Realty Corp. v. Ruggieri, 326 F.2d 281, 282 (2 Cir. 1963). In none of these cases would forfeiture have "seriously impaired", let alone totally frustrated, an arrangement by depriving the debtor of an asset absolutely necessary to its continued viability. Compare Finn v. Meighan, supra, 325 U.S. at 302 (65 S.Ct. 1147, 89 L.Ed. 1624).
 
 
 11
 503 F.2d at 206, 207.
 
 
 12
 The district court correctly held, therefore, on the basis of these authorities, that "These cases unanimously hold that the granting of a landlord's motion for possession of property where such an action would necessarily preclude the possibility of a reorganization plan is obviously inconsistent with that obligation. The interests of over two hundred of the Fontainebleau's creditors must not be sacrificed to the benefit of the landlord, PREIT."[2]
 
 
 13
 The district court's finding that the debtor corporation's reorganization petition was filed in good faith should not be disturbed. The reasons for decision are adequately set forth in the memorandum opinion of the district court based on facts which we cannot say are clearly erroneous. See Rule 52(a), Fed.R.Civ.P.
 
 
 14
 Nevertheless, we are not satisfied from the record of the operation of the hotel under the trustees that reorganization is practical or feasible under the Chapter X provisions. There is no reason to keep this debtor in reorganization status indefinitely without a plan for reorganization, with the hope that somehow hotel conditions in New Orleans will improve and the trustees will ultimately be able to operate profitably or find someone who can provide the necessary finances to take over the hotel operation. The record of performance to date has not been very promising. The trustees claim they need more time. Perhaps so. But an appropriate plan of reorganization must be filed expeditiously and we direct that the district court fix a date not later than November 1, 1975 for trustees to file a plan, failing in which the court shall terminate the Chapter X proceedings. By granting this further delay, we have directed the court to set a time limit which is reasonable under all circumstances.[3]
 
 
 15
 Affirmed.
 
 
 
 [1]
 In this regard we quote the Third Circuit decision in Fleetwood, where the court said:
 The appeal of the landlord is based upon the declaration in § 70, sub. b of the Bankruptcy Act that "an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable." 11 U.S.C. § 110, sub. b (1958 ed.). The applicability of this section to reorganization proceedings under Chapter X making a covenant like the one in the case at bar enforceable in such proceedings was conclusively established by the Supreme Court in Finn v. Meighan, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945). And in this Circuit see, In re Technical Marine Maintenance Co., 169 F.2d 548 (C.A. 3, 1948). But less than one year following its decision in Finn, the Court made it clear that the question of the enforceability of such a covenant is separate and distinct from the question of whether enforcement in a particular case would be consistent with other provisions of the Bankruptcy Act. Smith v. Hoboken Railroad, Warehouse and Steamship Connecting Co., 328 U.S. 123, 66 S.Ct. 947 (90 L.Ed. 1123). In that case the Court held that § 70, sub. b is also applicable to railroad reorganizations. But because of the great public interest, represented there by the Interstate Commerce Commission, in the forfeiture of a lease of a railroad line and because forfeiture would preclude the formulation of any plan of reorganization, the Court ruled further that the district court had erred in declaring the lease forfeited.
 We think that the rationale of Smith, coupled with the inherent equity powers of a court of bankruptcy, see McDonnell v. Bucks County Farms, Inc., 334 F.2d 763, 766 (C.A. 3, 1964), provide abundant support for the conclusion of the district court in the case at bar. For here the public, represented by the Securities and Exchange Commission, has invested over a half million dollars in the debtor corporation. And obviously no plan of reorganization could be formulated if forfeiture were permitted, for the property which the landlord would obtain by such action is the only property of the debtor. Moreover, we have already recited in detail the factual circumstances attending the execution and operation of this lease, as well as the obligations contained therein. We shall not repeat them here. Suffice it to say that they amply warranted the exercise of the equitable power of the bankruptcy court to deny the landlord's petition for possession of the premises.
 These very facts also distinguish this case from In re Technical Marine Maintenance Co., 3 Cir., 169 F.2d 548, which is relied upon by the landlord. Furthermore, no question was raised in that case as to the power of a court of equity to refuse enforcement of a forfeiture clause in appropriate circumstances.
 335 F.2d at 862.
 
 
 [2]
 The district court did not cite Queens Boulevard, supra, in its opinion
 
 
 [3]
 The liabilities of the hotel are approximately $2,300,000 of which secured obligations amount to $1,210,781.60; city, state and federal taxes amount to $468,454.61; and unsecured debts total $617,053.53. PREIT contends that Fontainebleau has assets of only $322,000 available to pay creditors
 According to the joint statement filed by the parties, the hotel has operated since the filing of the petition herein in August 1974 through April 1975 at an average monthly loss of $22,716.56. This was based, however, on the monthly obligation of $73,706.27 of rent due to PREIT. The district court in a subsequent hearing has reduced the rent to $48,000 per month plus a percentage of annual receipts above certain set amounts. This ruling of the district court is under appeal, however.