## VILLAGE OF MANTORVILLE v. CHICAGO GREAT WESTERN R. CO.

### No. 337.

District Court, D. Minnesota, First Division.

Nov. 7, 1934.

Stearns, Stone & Mackey, of St. Paul, Minn. (Walter H. Jacobs and Guy A. Gladson, both of Chicago, Ill., of counsel; W. C. Mulligan, of Chicago, Ill., on the brief), for the motion.

George B. Edgerton and William C. Green, both of St. Paul, Minn., opposed.

NORDBYE, District Judge.

This action was brought in the state court, and on August 8, 1934, the judge of that court issued an order restraining the defendant from abandoning that portion of· its railway line commencing at Mantorville, Minn., and extending to and into the village of Wasioja, Minn., as part of its rail-way system, and from failing to furnish transportation facilities between Eden, Minn., and Mantorville, Minn., as provided for in an order of the Railroad and Warehouse Commission of the state of Minnesota, dated April 26, 1924. The hearing on the order for temporary injunction was set down for argument on August 13, 1934. Before the hearing of said motion, the cause was removed by the defendant to this court.

It appears from the complaint that on or about May 4, 1896, the Mantorville Railway & Transfer Company and the Chicago Great Western Railway Company (herein known as the Chicago Great Western Railroad Company) entered into a contract in writing wherein and whereby the Mantorville Company agreed to sell to the railway company certain real estate and a certain railway roadbed, together with franchises, right of ways, bridges, culverts, depot buildings, and grounds, in consideration of the railway company's agreeing to place on said roadbed "a good and substantial super-structure necessary to complete the same as a line of railroad for the passage of trains, and thereafter would maintain and operate the same as a part of the railway system of said Chicago Great Western Railway Company, and would thereafter furnish to the town of Mantorville all reasonable and necessary facilities for handling freight and transporting the same, and daily.trains for the transportation of passengers, at least one train each way, passenger, or passenger and freight mixed."

It is contended that this agreement was made for the benefit of the town, now village of Mantorville, and persons residing in and doing business·in said village. On September 29, 1896, the Mantorville Company, in pursuance of the contract hereinbefore referred to, did sell and transfer to the railway company the property described, and the railway company went into possession and proceeded to fulfill the covenants contained in said deed, which were substantially the same as the provisions of the contract. It appears that the railway company fairly fulfilled the contract until May 11, 1921, when it discontinued its passenger service and rendered service which did not comply with the contract and which plaintiff contended was inadequate. A complaint was filed by this plaintiff and members of its village council with the Railroad and Warehouse Commission of this state praying for an order requiring defendant to operate a daily passenger or mixed train between Mantorville, Minn., and Eden, Minn. On September 20, 1921,

the Railroad and Warehouse Commission filed its order requiring defendant to put into service and operate upon said branch passenger facilities which would afford accommodation to the traveling public. An appeal was taken from this order to the state district court, where on April 9, 1923, the order of the Railroad and Warehouse Commission was affirmed. The plaintiff contends that the defendant failed to comply with the order of the Commission, and thereafter, by due proceedings, a penalty totaling some $9,000 was assessed against the defendant in favor of the plaintiff and entered as a judgment. Subsequently, however, and in March, 1924, the controversy was adjusted and the judgment was vacated, and the parties stipulated to a modification of the former order entered by the Railroad and Warehouse Commission, upon which stipulation the Commission entered an amended order, which amended order, however, provided, among other things, as follows: "This agreement shall not modify or change the contract in the deed from the Mantorville Railway and Transfer Company to the Chicago Great Western Railroad Company dated May 5, 1896, which contract shall stand with the same effect and force that it has today."

Service was subsequently provided by the defendant in conformance with the amended order of the Railroad and Warehouse Commission, but plaintiff now alleges that the defendant refuses to comply with the covenants of the deed and the agreement made in March, 1924, upon which agreement the amended order of the Commission was entered, and that the defendant now threatens to abandon its branch line between Eden and Mantorville, and has obtained a certificate of public convenience and necessity from the Interstate Commerce Commission dated July 10, 1934, effective thirty days from the date thereof. Plaintiff avers that it would not have agreed to the vacation of the judgment for $9,000 except for the agreement that the contract contained in the deed should remain in full force and effect, and, if defendant now abandons the branch line, the consideration for the vacation of said judgment will have wholly failed. It contends that it will suffer irreparable damage by reason of the abandonment, and seeks to enjoin and restrain the defendant from abandoning said branch line, and for a decree requiring the defendant to maintain and operate a railroad on said branch in accordance with the contract of 1896, subject to the modification of the order of the Railroad and Warehouse Commission dated April 26, 1924, during the time that said order remains effective. Plaintiff asks in the alternative for damages in the sum of $9,000 in the event the court refuses to grant the equitable relief.

The report of the Interstate Commerce Commission dated July 10, 1934, is attached to defendant's answer. It appears that the Railroad and Warehouse Commission of Minnesota entered an appearance as intervener, and that the plaintiff, the village of Mantorville, appeared as one of the protestants. The deed between the Chicago Great Western Railway Company and the Mantorville Railway & Transfer Company was offered in evidence by the intervener and received. On April 23, 1934, the interveners and protestants, including the village of Mantorville, filed their exception to the report proposed by the examiner, stating: "In arriving at said proposed report the examiner failed to give due weight, or take cognizance of, objector's exhibit No. 4, the same being a duly certified copy of a deed, from the Mantorville Railway and Transfer Company, a corporation, to the Chicago Great Western Railroad Company, a corporation. * * *"

The Interstate Commerce Commission in its report found, among other things, that the branch "cannot be safely operated without an unjustifiable expenditure for rehabilitation; that there is insufficient rail traffic in the tributary territory to support it; and that continued operation would impose an undue burden on the applicant's resources and upon interstate commerce."

In commenting upon the deed of transfer, the Commission recited the provisions of the deed with reference to the obligation of the defendant to furnish train service, and also referred to section 4637 of Mason's Minnesota Statutes for 1927, which provides that a railway company may be required by order of the Railroad & Warehouse Commission to furnish a passenger train daily through each county seat on the line of such carrier (Mantorville being a county seat), and concluded by stating: "These matters are not controlling in determining questions of public convenience and necessity." The order provided that "the present and future public convenience and necessity permit the abandonment by the Chicago Great Western Railroad Company of the branch line of railroad in Dodge county, Minnesota, described in the application and report afore said."

In limine, we are confronted with the question of the jurisdiction of this court. The complaint does not in so many words

seek to annul or modify the order of the Interstate Commerce Commission, and apparently bases its right to an injunction on the so-called contract right contained in the deed heretofore described, but manifestly the ultimate purpose of the action is to require the defendant to refrain from doing that which the Interstate Commerce Commission in its order stated it might do.

"The fact that this was a suit to set aside an order of the Commission did not appear on the face of the bill; but it became apparent as soon as the motion to dismiss was filed. Jurisdiction cannot be effectively acquired by concealing for a time the facts which conclusively establish that it does not exist." Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U. S. 377, 382, 42 S. Ct. 349, 351, 66 L. Ed. 671.

The petitioner herein seeks to obtain a decree requiring the defendant to provide train facilities in accordance with the deed, subject to the modification of the order of the Railroad and Warehouse Commission, which, as before stated, provides for a modification of the train service called for in the deed. The defendant company is asked to do that which is directly contrary to the order of the Commission. In effect, if plaintiff prevails, the order of the Commission will be suspended, and plaintiff is endeavoring indirectly to obtain an annulment of the Commission's order in proceedings where it appears that the Commission was advised and had before it, and presumably considered, the very deed which is now the basis of this action. True, the Commission did not attempt to exercise any power, if any it has, to determine the respective contract rights of the parties in light of its order of abandonment, but, with the Railroad and Warehouse Commission basing its objection to the application of this defendant for abandonment of this branch line, in part at least, upon the deed referred to, and with the village of Mantorville appearing as a protestant, the Commission has determined that, notwithstanding the existence of this so-called contract, public necessity and convenience permit the abandonment. The fact that the order of abandonment is designated as permissive is of no particular moment. The act provides (49 USCA c. 1, § 1, par. 20): " * * * From and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate

and proceed with the construction, operation, or abandonment covered thereby."

 The fact that such order of the Commission may run counter to a state statute, a municipal ordinance, or even a charter provision, is no impediment to the Commission's exclusive and plenary jurisdiction to regulate interstate commerce. The fact that the order is termed permissive and not mandatory does not give a state or a municipality the right to proceed in abrogation of the Commission's findings and order, and it is now uniformly recognized that, under the Transportation Act of 1920 (Interstate Commerce Act § 1 (18–20), 49 USCA § 1 (18–20), the Interstate Commerce Commission has exclusive power to authorize the abandonment of all or a portion of a line of railroad used in interstate commerce. Central N. E. Ry. Co. v. B. & A. R. Co., 279 U. S. 415, 49 S. Ct. 358, 359, 73 L. Ed. 770; Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 454, 70 L. Ed. 878; Dayton-Goose Creek Ry. Co. v. United States, 263 U. S. 456, 44 S. Ct. 169, 171, 68 L. Ed. 388, 33 A. L. R. 472; Texas v. Eastern Texas R. Co., 258 U. S. 204, 42 S. Ct. 281, 66 L. Ed. 566.

Public convenience and necessity are not determined by a Commission merely to protect the railroad, but to protect interstate commerce from onerous burdens which may affect the efficiency and the ability of the carrier to perform its duty to the public.

"The certificate issues not primarily to protect the railroad, but to protect interstate commerce from undue burdens or discrimination. The Commission by its order removes an obstruction which would otherwise prevent the railroad from performing its federal duty." Colorado v. United States, supra, page 162 of 271 U. S., 46 S. Ct. 452, 454.

And in the same case Judge Brandeis stated (page 165 of 271 U. S., 46 S. Ct. 452, 455): "But even explicit charter provisions must yield to the paramount power of Congress to regulate interstate commerce."

In commenting upon the Transportation Act, Judge Taft in Dayton-Goose Creek Ry. Co. v. United States, supra, clearly announced the objectives of Congress in passing the commerce act, and stated (page 478 of 263 U. S., 44 S. Ct. 169, 172): "The new act seeks affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country. It aims to give the owners of the railways an opportunity to earn enough to maintain their proper-

ties and equipment in such a state of efficiency that they can carry well this burden. To achieve this great purpose, it puts the railroad systems of the country more completely than ever under the fostering guardianship and control of the Commission which is to supervise their issue of securities, their car supply and distribution, their joint use of terminals, their construction of new lines, their abandonment of old lines, and by a proper division of joint rates, and by fixing adequate rates for interstate commerce, and in case of discrimination, for intrastate commerce, to secure a fair return upon the properties of the carriers engaged."

It must be evident, therefore, that the Interstate Commerce Commission had jurisdiction to pass upon the contended contract limitation of the railroad's right to petition for leave to abandon this branch line. The contract for railroad service in the instant case is based upon a recital in a deed from one carrier to another. Assuming that the contract was made for the benefit of this plaintiff and the residents of the village, it is not more sacrosanct than a charter provision that may have been granted by the state to the carrier, and must yield to the paramount right of Congress to regulate interstate commerce. In view of the exclusive authority vested in the Commission, it cannot be successfully maintained that the recital in the deed necessarily required the Interstate Commerce Commission to deny the petition for leave to abandon, or that the Commission did not have jurisdiction to determine the question of public necessity and convenience, in light of all of the circumstances presented to it. That it considered the effect of this deed and its bearing on the question of abandonment must be conceded, and, if it erred, then plaintiff has its remedy in a proper tribunal. Nor can plaintiff complain that it has been denied due process. It was advised of the hearing, and, in addition to its representation through the Railroad and Warehouse Commission, a state agency, it appeared before the Commission as a protestant. This court has no jurisdiction to entertain any proceeding which seeks to attack collaterally the Commission's order. Congress has vested sole jurisdiction in the District Courts of the United States over all suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission, and no interlocutory injunction " * * * suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Com-

merce Commission shall be issued or granted by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, unless the application for the same shall be presented to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a circuit judge, and unless a majority of said three judges shall concur in granting such application. * * * And upon the final hearing of any suit brought to suspend or set aside, in whole or in part, any order of said commission the same requirement as to judges and the same procedure as to expedition and appeal shall apply." 28 USCA c. 2, § 47.

In Venner v. Michigan Central R. Co., 271 U. S. 127, 46 S. Ct. 444, 70 L. Ed. 868, the defendant and other railroads secured a permissive order from the Interstate Commerce Commission under section 20a of the act (49 USCA § 20a) authorizing the issuance of trust certificates in connection with the securing of certain locomotives. A minority stockholder of the defendant commenced a suit in state court to restrain the railroad company from doing that which the Commission had in its order specifically authorized; the stockholder contending that the requisite state authority had not been obtained. It will be noted that the order of the Interstate Commerce Commission was permissive. The matter was transferred to the United States court by reason of diversity of citizenship, and, upon motion of defendant, the suit was dismissed because of lack of jurisdiction. Upon appeal, the United States Supreme Court stated (page 130 of 271 U. S., 46 S. Ct. 444, 445): "We agree with the court below that the suit is essentially one to annul or set aside the order of the Commission. While the amended bill does not expressly pray that the order be annulled or set aside, it does assail the validity of the order and pray that the defendant company be enjoined from doing what the order specifically authorizes, which is equivalent to asking that the order be adjudged invalid and set aside. Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., 258 U. S. 377, 380, 382, 42 S. Ct. 349, 66 L. Ed. 671. Such a suit must be brought against the United States as the representative of the public and may be brought only in a federal district court. Judicial Code, §§ 208, 211 (28 USCA §§ 46, 48) ; Act Oct. 22, 1913, c. 32, 38 Stat. 219 (28 USCA § 43); Illinois Central R. R. Co. v. State Public Utilities Commission, 245 U. S. 493, 504, 505, 38 S. Ct. 170, 62 L. Ed. 425; North Dakota v. Chicago & Northwestern Ry. Co., 257 U. S. 485,

487, 42 S. Ct. 170, 66 L. Ed. 329; Texas v. Interstate Commerce Commission, 258 U. S. 158, 164, 42 S. Ct. 261, 66 L. Ed. 531; Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., supra. That the order is not mandatory, but permissive, makes no difference in this regard. Chicago Junction Case, 264 U. S. 258, 263, 44 S. Ct. 317, 68 L. Ed. 667. And, as the state court was without jurisdiction, the federal court acquired none by the removal. Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., supra."

In Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., supra, a shipper secured an injunction restraining a carrier from complying with a rule for the distribution of coal cars at a time of a car shortage. In considering a motion to dismiss, it appeared to the court that the rule had been established in compliance with the requirements of the Interstate Commerce Commission. Initially, the action was commenced in state court, but was removed to federal court, and, on appeal, the Supreme Court stated (page 383 of 258 U. S., 42 S. Ct. 349, 351): "And the vital interest of the United States was one which the plaintiff could neither ignore nor prejudice by indirection. Compare International Postal Supply Co. v. Bruce, 194 U. S. 601, 24 S. Ct. 820, 48 L. Ed. 1134; Naganab v. Hitchcock, 202 U. S. 473, 26 S. Ct. 667, 50 L. Ed. 1113; United States ex rel. Goldberg v. Daniels, 231 U. S. 218, 34 S. Ct. 84, 58 L. Ed. 191; Louisiana v. McAdoo, 234 U. S. 627, 34 S. Ct. 938, 58 L. Ed. 1506. The District Court should therefore have dismissed the bill as soon as it became apparent that the suit was one to set aside an order of the Commission."

This court might appropriately paraphrase the language in the Lambert Run Coal Co. Case and state that the vital interest of the United States in supervising the interstate service rendered by this defendant company cannot be suspended and canceled by a collateral proceeding, which would be the result if the court granted the relief asked by the plaintiff herein. Whether the plaintiff has contract rights which will be breached, giving rise to an action for damages, this court does not now consider, and, in view of the disposition of this case, the court does not pass upon the question as to whether the defendant has not already fulfilled the entire covenants contained in the deed. Plaintiff relies on the case of Central New Eng. R. Co. v. Boston & Albany R. Co., 279 U. S. 415, 49 S. Ct. 358, 359, 73 L. Ed. 770. In that case the petitioner, an interstate rail carrier, in order to secure an entrance to Springfield, Mass., entered into a contract which provided that until a designated period it should have the right to operate a certain number of trains per day over the line of the respondent, for which it agreed to pay the sum of $15,000 annually. After this contract had been in existence for many years, but before its termination, the petitioner abandoned this section of its branch line, purporting to act under a certificate of public necessity issued by the Interstate Commerce Commission, and it notified the respondent that it would no longer meet its obligations under the contract. An action was brought by the respondent to recover from the petitioner the annual payments due under the contract. A verdict was returned in favor of the plaintiff, and, upon appeal to the Supreme Court, two of the defenses which involved federal questions were considered. The petitioner contended that the effect of the order was to relieve it from making any further annual payments under its contract. But, in construing the findings of the Commission, the court concluded that the "omission from the certificate of any reference to the contract thus brought to the attention of the Commission, plainly evidences an absence of intention to deal with it," and, in absence of such intention, the court held that the permission to abandon did not relieve the petitioner of its liability by reason of the breach of contract. The court, however, in that case was not dealing with any action which had for its purpose the suspension of the order of the Commission. That case may have some bearing on the right of the plaintiff herein to recover damages, but it is scarcely authority for plaintiff's contention herein that it can, by indirection, restrain the defendant from doing that which the Commission expressly authorized it to do. In the instant case, the alleged contract for train service was before the Commission; it was considered in determining the question of public convenience and necessity, while in the Central New Eng. R. Co. Case the Commission studiously refrained from making any reference to the contract between the carriers. In the instant case, we have affirmative facts and circumstances which demonstrate that the Commission exercised its authority in determining the effect of this contract on the question presented to it.

The second federal question considered by the court in the Central New Eng. R. Co.

Case is singularly pertinent to the question of jurisdiction in this case. There, the petitioner challenged the jurisdiction of the state court, but, in disposing of that question, the Supreme Court stated (page 420 of 279 U. S., 49 S. Ct. 358, 360):

"As the suit is upon contract and does not assail the order of the Commission, it is not one to 'enjoin, set aside, annul or suspend' an order of the Commission of which the federal district courts are given exclusive jurisdiction under section 208 of the Judicial Code (28 USCA § 46). Hence the state court retained its jurisdiction to give 'remedies now existing at common law,' preserved by section 22 of the Interstate Commerce Act (49 US CA § 22), Pennsylvania R. R. v. Puritan Coal Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867, Pennsylvania R. R. v. Sonman Coal Co., 242 U. S. 120, 37 S. Ct. 46, 61 L. Ed. 188, and subject to the power of revision by this court it could construe the order of the Commission, Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943.

"In Lambert Co. v. Baltimore & Ohio R. R. Co., 258 U. S. 377, 42 S. Ct. 349, 66 L. Ed. 671; Venner v. Michigan Central R. R. Co., 271 U. S. 127, 46 S. Ct. 444, 70 L. Ed. 868; North Dakota v. Chicago & Northwestern Ry. Co., 257 U. S. 485, 42 S. Ct. 170, 66 L. Ed. 329; Illinois Central R. R. Co. v. Public Util. Comm., 245 U. S. 493, 38 S. Ct. 170, 62 L. Ed. 425, relied upon by petitioner, affirmative relief was prayed directing either that the order be set aside, or that the carrier do or refrain from doing acts in a manner inconsistent with the order of the Commission directing or permitting certain administrative acts to be performed, relief which, it was held, would operate practically to set aside the order of the Commission. Here respondent does not ask that the order be set aside or that it be regarded as illegal and void; it insists only that the order did not purport to deal with the contract between the carriers, and so cannot have the effect, attributed to it by petitioner, of annulling the contract. The question is merely one of the legal effect of the order. Neither party contests its validity or asks that the carrier be compelled to do anything inconsistent with its terms."

■ The state court lacked jurisdiction of the subject-matter or of the parties, and, upon removal, this court acquired none. The case, therefore, will be, and hereby is, dismissed without prejudice, and the restraining order heretofore issued by the state court is vacated, discharged, and set aside.