William MEYERS, Standard Brands Incorporated, Brillo Manufacturing Co., Inc., Atlantic Gummed Paper Corp., Warshaw Manufacturing, Inc., and Abraham & Straus Division of Federated Department Stores, Inc., Plaintiffs-Appellees,

v.

JAY STREET CONNECTING RAILROAD, and Moses Spatt, Milton E. Spatt, Joseph S. Wohl, and Herbert S. Struller, individually and as officers and directors thereof, Defendants-Appellants.

No. 395, Docket 25309.

United States Court of Appeals Second Circuit.

Argued Sept. 29, 1958.

Decided Oct. 7, 1958.

Rehearing Denied Oct. 27, 1958.

Richard S. Buell, New York City (Mc-Lanahan, Merritt & Ingraham, New York City, on the brief), for plaintiffs-appellees William Meyers, Atlantic Gum-med Paper Corp., and Warshaw Mfg., Inc.

James E. Sapp, Jr., New York City, for plaintiff-appellee Standard Brands Inc.

Morris Gottlieb, New York City, for plaintiff-appellee Brillo Mfg. Co., Inc.

Jacob Imberman, New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief), for plaintiff-appellee Abraham & Straus Division of Federated Department Stores, Inc.

J. Bertram Wegman, New York City (Wegman, Epstein & Burke, New York City, on the brief), for defendants-appellants.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

The question for decision is whether there is sufficient basis for the district court's issuance of a preliminary injunction enjoining the Railroad and the four individual defendants from ceasing operations on the ground that the Interstate Commerce Commission has not permitted abandonment. We think the preliminary injunction was properly issued and we affirm the order of the District Court for the Eastern District of New York.

On August 20, 1958, Judge Abruzzo, after a hearing which commenced August 13, issued an injunction, preliminary to a trial of the action set for October 6, 1958, which enjoined defendants from

> "directly or indirectly abandoning or ceasing operations of the defendant, Jay Street Connecting Railroad, or refusing to receive, deliver or transport carload freight. * * *"

The order is conditioned upon the giving of $50,000 security by the plaintiffs to safeguard against interim losses should the defendants ultimately prevail.

The plaintiffs here all either ship freight on the Railroad, or own buildings presently served by it. The individual defendants are all officers, stockholders

or directors of the corporate defendant, the Jay Street Connecting Railroad.[1]

The Railroad's main track of 3,102 feet is entirely located within a small area of Brooklyn adjacent to the East River and extending for a few blocks under and on either side of the ramp of the Manhattan Bridge. The Railroad delivers to and receives freight cars from its customers in this area solely by means of numerous spur tracks and team tracks which total in length respectively 6,313 feet and 3,352 feet. There is no public terminal where freight can be received or discharged, and freight is handled only by the carload. The other terminal points of the Railroad lie in the Bronx and in Hudson County, New Jersey, where the Railroad interchanges with the major eastern trunk line railroads. The Railroad transports cars between these shore line interchange points and its Brooklyn tracks by means of a carfloat propelled by a tug. Since 1941 the Railroad has operated under a certificate of convenience and necessity issued by the Interstate Commerce Commission.

During the last several years the financial condition of the Railroad has seriously deteriorated. The district court found that the Railroad has lost money for five years and is now losing money, that its current liquid assets are "approximately $400," and that "the present operation of the Railroad is being done on borrowed money." There is uncontested evidence in the record of large and increasing monthly losses. There is further undisputed testimony that the Railroad has recently managed to continue operations only by withholding from the trunk line roads their share of the freight charges which it had collected, and by advances from its stockholders. In June 1958 the Railroad applied to the Commission for a certificate of convenience and necessity authorizing abandonment of its operations, and hearings were set for August. Finally, after the district court proceedings referred to above, hearings were commenced before a Commission examiner on September 2 and concluded on September 10. The parties now await the examiner's report.

On August 5 the Railroad was notified by some of the trunk line roads with which it connects that no more credit would be extended to it. At about the same time the Railroad's tugboat met with an accident and was ruled unfit for use by the Coast Guard, thus necessitating the rental of another tug. On August 6 the Railroad notified its patrons that because of a lack of funds to meet operating expenses and in order to prevent the accumulation of cars it was issuing "an embargo on all freight, with no exceptions, from, to or via the Jay Street Terminal, The Jay Street Connecting Railroad, Brooklyn, New York, including all private side tracks, team tracks and other facilities, which embargo will become effective midnight, August 8, 1958." At the same time the Railroad notified its employees that their services would not be needed after August 8. The plaintiffs construed the embargo as a threat by the Railroad to abandon operations and they immediately sought a temporary restraining order forbidding such abandonment. On August 8 the district court issued a temporary restraining order. After the commencement of the hearing on August 13, it extended the order and on August 20 it issued the preliminary injunction here in issue.

The statutory bases for the injunction are paragraphs (18) and (20) of § 1 of the Interstate Commerce Act, 49 U.S.C.A. § 1(18), (20). Paragraph (18) provides that "no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or

---

[1]. Defendant Moses Spatt is a director, a vice-president, and owns fifty percent of the stock. The remaining fifty percent of the stock is owned by defendant Wohl, who is also secretary-treasurer and a director. Defendant Milton Spatt is executive vice-president and defendant Struller is comptroller.

future public convenience and necessity permit of such abandonment." Paragraph (20) provides that "any * * * abandonment contrary to the provisions of * * * paragraph (18) * * * of this section may be enjoined by any court of competent jurisdiction at the suit of * * * any party in interest * * *."

It is conceded by both sides that the Jay Street Connecting Railroad is a "carrier by railroad subject to this chapter" within the meaning of paragraph (18) except as the Railroad or any part of it is affected by paragraph (22) of 49 U.S.C.A. § 1. Paragraph (22) provides: "The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the * * * abandonment of spur, industrial, team, switching, or side tracks, located * * * wholly within one State. * * *"

Defendants urge three reasons for reversing the preliminary injunction. First, they argue that their August 6 embargo notice did not constitute a threat of abandonment within the meaning of paragraph (18). Second, they assert that paragraph (22) exempts such a significant portion of the Railroad from ICC jurisdiction as to leave the plaintiffs with no cause of action even if the embargo would have been an abandonment. Finally, they argue that whatever the legality of the proposed embargo, the district court's injunction is improper because the Railroad does not possess the funds to operate. We find no merit in these arguments.

■ The basis for defendants' first argument is their assertion that the August 6 embargo was intended only as a temporary cessation of service, to last until funds with which to resume operations were somehow found. They urge that a cessation of service must be permanent in order to constitute an abandonment within the meaning of paragraphs (18) and (20) of 49 U.S.C. § 1, and in support of this proposition they cite language in Zirn v. Hanover Bank, 2 Cir., 1954, 215 F.2d 63, 69, and in

Wheeling & L. E. R. Co. v. Pittsburgh & W. V. R. Co., 6 Cir., 1929, 33 F.2d 390, 392. It is true that these cases define abandonment as a permanent cessation of service. It is also true that the August 6 notice of embargo did not expressly recite an intention never to resume operations. That embargo was, however, an expression of an intention indefinitely to cease all service. We think the purpose of paragraphs (18) and (20) permits of no distinction between discontinuing service permanently and suspending it indefinitely. So far as these plaintiffs are concerned there is no way of knowing when they can expect service to resume and they can make no business plans on the possibility that service may be resumed.

We come next to the effect of paragraph (22) of 49 U.S.C.A. § 1. There is no doubt that a substantial part of the defendant Railroad's track consists of "spur, industrial, team, switching, or side tracks," the abandonment of which, at least separately, would not fall within the authority of the ICC. The Railroad, however, also contains track the abandonment of which is clearly within the authority of the ICC. This is so on two accounts. First, defendants concede in their brief that the Railroad contains a "main line" in addition to its spurs and sidings. In addition, the Railroad is an interstate operation, with an interchange point in New Jersey, and paragraph (22) restricts the authority of the ICC only insofar as intrastate side lines are concerned.

■ Were the defendants' threat to abandon limited to a part of the track it would have been necessary for the district court to determine whether that part was exempt from ICC authority under paragraph (22). It was unnecessary, however, to go into such questions in this case. The notice of embargo of August 6 was a proposal to abandon the entire operation of the Jay Street Connecting Railroad. This total abandonment would have included the abandonment of track within the jurisdiction of the ICC. It was therefore proper under

paragraph (20) to enjoin the proposed abandonment of the entire line.

Defendants seek to excuse their threat of total abandonment by arguing that were they only to abandon all the spurs and side tracks which they claim they may properly abandon under paragraph (22), no shipper would have access to their lines. The effect would then, they say, be the same as that of the total abandonment which the district court enjoined. Of course it is open to the defendants to develop in the district court the facts regarding any abandonment which may be permissible under paragraph (22) and it would then be the duty of the district court to make findings with respect to such proposed abandonment. All that defendants have as yet proposed is an abandonment of their entire operation, and we hold that an injunction prohibiting that is proper.

■ Once we have concluded that the proposed abandonment of the entire Railroad would be improper under paragraph (18) of 49 U.S.C.A. § 1, it is clear that the plaintiffs here are parties in interest entitled to an injunction under paragraph (20) of that section. Plaintiffs are the Railroad's customers. Its cessation of service disrupts their business operations. Their interest in the matter could hardly be more acute.

■ Defendants' final point is that Judge Abruzzo's injunction is improper because the corporation has not the funds or credit to comply. Were it in fact impossible for the individual defendants to avoid contempt proceedings without sacrificing their personal funds this point would be a serious one. As it is, however, defendants can attempt to escape personal liability by petitioning for reorganization of the railroad under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. They have not sought this relief. Unless they do so, and relief is denied to them, it is our opinion that the hardships imposed by the injunction do not outweigh the strong purpose of the Interstate Commerce Act to prohibit the abandonment of railway service without the approval of the ICC.

It is to be hoped that in view of the financial situation allegedly faced by the Railroad the examiner and the Commission will expedite their determination of the application to abandon.

The order is affirmed.

## On Petition for Rehearing.

### PER CURIAM.

The petition for rehearing is denied. The original opinion stated that "it is open to the defendants to develop in the district court the facts regarding any abandonment which may be permissible under paragraph (22) and it would then be the duty of the district court to make findings with respect to such proposed abandonment." The district court was confronted only with a proposal for total abandonment. Until it has had an opportunity to pass upon such other and different proposals which plaintiffs may wish to advance, there is no occasion for appellate consideration of the matter.