271 F.2d 811
 William MEYERS, Standard Brands Incorporated, Atlantic Gummed Paper Corp. and Warshaw Manufacturing, Inc., Plaintiffs-Appellants,
v.
FAMOUS REALTY, INC., and Moses Spatt and Joseph S. Wohl, individually and as director-trustees in dissolution thereof, Defendants-Appellees.
 No. 356.
 Docket 25851.
 United States Court of Appeals Second Circuit.
 Argued September 9, 1959.
 Decided October 27, 1959.
 
 Richard Swan Buell, New York City, (McLanahan, Merritt & Ingraham, and Andrew M. Calamari, New York City, on the brief), for plaintiffs-appellants.
 Whitney North Seymour, New York City (Simpson Thacher & Bartlett, Richard Hawkins and Taylor R. Briggs, New York City, on the brief), for defendants-appellees.
 Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 The plaintiffs sought to charge the defendants, lessors of certain realty and tracks used by the Jay Street Connecting Railroad in its operations, with the duty of operating that railroad's line (which the I. C. C. has authorized the Railroad, as lessee, to abandon on condition)[1] until the defendants are also authorized to abandon or until they lease the property to the plaintiffs. The action was brought under 49 U.S.C.A. § 1(18) and (20).[2] The court below granted the defendants' motion to dismiss, a ruling which, for the reasons hereinafter stated, we think correct.
 
 
 2
 It is not necessary for purposes of this decision to review at length the detailed historical facts surrounding the ownership and operations of the Jay Street Connecting Railroad (hereinafter referred to as "Jay Street"). See Jay Street Connecting Railroad Acquisition, 244 I.C.C. 43; Meyers v. Jay Street Connecting Railroad, 2 Cir., 259 F.2d 532; 2 Cir., 262 F.2d 676; Jay Street Connecting Railroad Abandonment, Finance Docket No. 20240, decided April 13, 1959, 307 I.C.C. 137; Jay Street Connecting Railroad v. United States, D.C.E.D.N.Y., 174 F.Supp. 609; Meyers v. Famous Realty, Inc., D.C.E.D.N.Y., July 10, 1959, 178 F.Supp. 472. Instead we reiterate merely those facts alleged by the plaintiffs which show the relationship of these defendants and their predecessors in title to the Jay Street Connecting Railroad and those findings contained in the above opinions with respect to the current ownership of the Jay Street's properties.
 
 
 3
 Jay Street performed an interstate harbor-terminal traffic interchange service from 1941 until April 1959, at which time the Interstate Commerce Commission ("Commission") approved the abandonment of its entire line of railroad and all of its carfloat and lighterage routes. For twenty-five years prior to 1941 Jay Street had merely performed a switching service involved in the harbor-terminal operations. In performing this service Jay Street had used its own equipment but had leased tracks from two lessors; the greater amount of main line and some other trackage was leased from the City of New York while a considerable amount of spur and some other trackage was leased from two partnerships, Jay Street Terminal and Arbuckle Brothers. These two partnerships had, prior to 1941, owned and operated a freight yard and the station thereon which it used in carrying on the marine activities constituting part of the harbor-terminal services involved herein. In Jay Street Connecting Railroad Acquisition, supra, the Commission approved Jay Street's purchase of all the partnerships' marine equipment, which included two towboats, a few carfloats, and several wooden barges. The Commission also approved a ten year lease to Jay Street of all the partnerships' real property, tracks, and freight house and yard facilities then used in the harbor-terminal operations, with a right reserved in the lessors to repurchase all of the leased equipment on default in the lease. The Commission reasoned that "the lines operated by the applicant and the freight house are natural component parts of one system of transportation," and concluded that the public interest would be served by allowing the two enterprises "to combine their transportation activities in a duly organized railroad corporation." 244 I.C.C. 43. The effect of this order on the carrier status of the partnerships will be discussed later.
 
 
 4
 In 1945, Famous Realty, Inc., not only acquired all the stock of Jay Street but it also purchased the fee to the land, buildings and tracks theretofore leased to Jay Street by the two partnerships. The defendants herein, Spatt and Wohl, are the sole distributees of the properties of Famous Realty, Inc., and thus stand in the shoes of the lessors of part of the properties heretofore used by Jay Street in its operations.
 
 
 5
 The plaintiffs argue that their right to relief is clear, citing Smith v. Hoboken R. R. Warehouse & S. S. Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123; Thompson v. Texas Mexican R. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132; Livestock Service Terminal Company, 257 I.C.C. 1; Hoboken Railroad, 257 I.C.C. 739. It is clear to us, however, that those cases hold, at most, that once a party acquires, through the continuous performance of carrier services for the public, the status of a "carrier by railroad," thus subjecting itself to the provisions of the Act and more particularly to § 1(18) and (20), it cannot absolutely terminate such status and the duties thereof by leasing its railroad facilities to another; once the lease is terminated or the lessee obtains permission to abandon its operations, the lessor is under a revived obligation to operate its railroad properties until it too receives an abandonment order from the Commission.
 
 
 6
 To be subject to the provisions of § 1(18) and (20) a party must have acquired the status of a carrier by railroad and it must be attempting to abandon all or some portion of a line of railroad owned or operated by it or, as we will assume for purposes of this case, by its predecessor in title. None of the decisions cited hold or imply that a non-carrier, by merely leasing its properties to a carrier, becomes a "carrier by railroad," thus subjecting itself to an obligation to carry on the operations of its lessee's railroad when said lessee has been granted an abandonment order. We hold that a carrier which leases mere trackage rights to another carrier is under no obligation to carry on that other carrier's operations when its lease expires or that other carrier's operations are legally abandoned. See Thompson v. Texas Mexican R. Co., supra; Central New England R. Co. v. B. & A. R. Co., 279 U.S. 415, 49 S.Ct. 358, 73 L.Ed. 770. For in such a case the lessor-carrier is not a carrier by railroad with respect to the services performed by its lessee. See Escanaba & L. S. R. Co. v. United States, 303 U.S. 315, 321, 58 S.Ct. 556, 82 L.Ed. 867. Thus we overrule without further comment the plaintiffs' contention that the defendants are under a duty to operate Jay Street's railroad line by virtue of the fact that their predecessors in title leased to Jay Street a part of the real property, tracks, and buildings used by it in its operations. As the defendants point out, a contrary holding would lead to the absurd conclusion that one renting a patch of cornfield to a railroad would come under an obligation to operate that railroad if it obtained permission to abandon the operation of its line.
 
 
 7
 A more reasonable proposition of law advanced by the plaintiffs, and one which would merit serious consideration if properly raised by the circumstances of this case, is that a carrier-lessor's grantees with notice are under an obligation to operate its carrier-properties when they revert to it under the terms of the lease or on the legal abandonment of operations by the lessee. It would not at all be unreasonable to hold, especially in these days when railroad operations are so often in the red, that a carrier-lessor cannot escape the burden of a potential obligation to operate, by the simple device of deeding its reversion in railroad properties to another; that the status of "carrier by railroad" and the duties therein involved attach to the grantees of a carrier's railroad properties.
 
 
 8
 But our decision must rest on the facts of this case. And the fact is that before as well as after the Jay Street Acquisition proceedings all transportation of freight by rail had been carried on by Jay Street with its wholly owned motive equipment and that neither at the time of the acquisition nor long prior thereto had the two partnerships, which were the defendants' predecessors in title to the real estate, owned or operated an integrated railroad property independent of Jay Street. Indeed, the partnerships had done no more than to contribute to an integrated transportation service the operation of their marine facilities and the use of their real estate in connection with the switching service and rail transportation conducted by Jay Street. And in the Jay Street Acquisition proceedings the Commission approved the outright sale of the marine facilities of the two partnerships and the transfer of all their transportation activities to Jay Street, finding it to be in the public interest that they should thereby be combined "in a duly organized railroad corporation." We hold that upon the Jay Street Acquisition, which with respect to their transportation activities left the partnerships with nothing but a reversion in the leasehold interest in the freight yard and some tracks, the partnerships lost all status as carriers by railroad. Glens Falls Portland Cement Co. v. Delaware & Hudson Co., 2 Cir., 66 F.2d 490, certiorari denied 290 U.S. 697, 54 S.Ct. 132, 78 L.Ed. 599. Thereafter, the sole duty to operate the transferred facilities and services rested with Jay Street, which has now been authorized not only to abandon the operation of its line but unconditionally to sell its facilities after thirty days.[3]
 
 
 9
 As noted below, perhaps it could reasonably be argued that, regardless of the terms of any lease, or the total absence thereof, under the terms of the Jay Street Acquisition order the defendants' predecessors, and indeed the defendants themselves, held the lands and tracks leased to Jay Street under the ten year lease subject to a power in the Commission to impose a continuing obligation to lease these properties on reasonable terms to Jay Street or to any other responsible carrier who would undertake to perform the harbor-terminal services including the marine activities connected therewith. We think it quite contrary to both the terms of the Act and reason itself to hold that these defendants are under a duty to operate this entire line because they or their predecessors have leased realty and tracks to a carrier whose line has been legally abandoned. Especially is this so when the line is composed of facilities which these defendants and their predecessors either have never owned or operated and facilities which they have, with Commission approval, sold outright to a carrier who undertook the sole responsibility for their operations.
 
 
 10
 The plaintiffs, perhaps recognizing the futility of an attempt to prevent authorization of abandonment in any Commission proceedings brought by the defendants for that purpose,[4] assert that their real motive in seeking to compel such proceedings is to provide an opportunity for the Commission, if it will not require the defendants to operate the line, at least to impose a condition of lease or sale in its abandonment order. But obviously, regardless of the plaintiffs' motive, § 1(20) applies only to those having carrier status who are under a duty to operate. If the Commission should find that the defendants for lack of carrier status are under no duty to operate the line, it would have no jurisdiction under § 1(20) for any purpose. In that situation, surely it could not attach substantive conditions to its order dismissing for lack of jurisdiction.
 
 
 11
 The plaintiffs in the Jay Street Abandonment proceedings argued that the Commission, though lacking jurisdiction over the persons of the defendants, had sufficient jurisdiction over their real estate to impose upon it conditions of lease or sale. And they argue now before us that the condition in the abandonment order in those proceedings attached to the real estate and so was applicable to these defendants. Accordingly, they pray in the alternative that we enjoin the defendants from abandoning the line until they comply with the Jay Street Abandonment order by leasing their property to the plaintiffs.
 
 
 12
 The pertinent provision of the Commission's abandonment order[5] is as follows:
 
 
 13
 "* * * it being intended by this condition that the purchasers of the physical properties shall be substituted for and occupy the same status [emphasis added] as the applicant now does with respect to said leasehold interests."
 
 
 14
 If the question were properly before us, we should interpret this provision to mean at most that irrespective of the provisions of the lease, if some purchaser of Jay Street's railroad properties had desired to continue that line's operation, the defendants could not have denied such purchaser the use of their lands or tracks without the permission of the Commission. Only under such an interpretation would the purchaser occupy the same status as Jay Street with respect to the leasehold interests. See Jay Street Connecting Railroad Acquisition, supra; Smith v. Hoboken R. Co., supra; Thompson v. Texas Mexican R. Co., supra.
 
 
 15
 However that may be, we hold that the question is not one which may be raised in this suit. This is so, we think, not because the plaintiffs are estopped by the Jay Street Abandonment proceedings from bringing a § 1(20) action to prevent unauthorized abandonment by the defendants.[6] Rather, we base our holding on the proposition that any questions with respect to the extent to which the Commission did or could impose binding conditions on the defendants in the Jay Street Abandonment order[7] are foreclosed by the three-judge district court's review of that order. That court, with these parties before it, held that the Commission's order did not purport to bind the defendants. D.C., 174 F.Supp. 609. The plaintiffs are estopped from once again contending that the order imposed conditions of lease or sale on these defendants. Moreover, any contention in this injunction suit that the Commission erred in not imposing such conditions in the Jay Street Abandonment order is an improper collateral attack on the Commission order, Village of Mantorville v. Chicago Great Western R. Co., D.C.D.Minn., 8 F.Supp. 791, an order which could be attacked only in the three-judge district court proceedings. 28 U.S.C.A. § 2325; Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671; Venner v. Michigan Cent. R. Co., 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868; State of North Dakota ex rel. Lemke v. Chicago & N. W. Ry. Co., 257 U.S. 485, 486, 42 S.Ct. 170, 66 L.Ed. 329.
 
 
 16
 The three-judge district court left open the question whether, notwithstanding the fact that the Commission's order did not purport to bind the defendants, they are under an independent duty to lease or sell their property to a purchaser of Jay Street's facilities. We still consider that question premature; even now the record shows no attempt to negotiate with the defendants-lessors. In any event, it seems difficult to conceive how, in the absence of a Commission order to that effect, any such duty could rest upon these defendants.
 
 
 17
 Our ruling sustaining the order granting the motion to dismiss necessarily is dispositive of so much of said order as denied the plaintiffs' application for a preliminary injunction.
 
 
 18
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The condition which was added to the original order by an amended order of May 26, 1959 was as follows:
 "The applicant shall sell to any responsible person, firm, or corporation, offering within thirty days from the date of service hereof to purchase the same for continued operation of the railroad line here involved or any portion thereof, any or all of its property necessary or useful to such continued operation, including the applicant's right and interest as lessee or tenant in respect of any such property and facilities used or useful in the operation of its line of railroad, at a price not less than the net salvage value of the properties and interests sought to be acquired, it being intended by this condition that the purchaser of the physical properties shall be substituted for and occupy the same status as the applicant now does with respect to said leasehold interests."
 
 
 [2]
 49 U.S.C.A. § 1
 "(18) * * * [N]o carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment.
 * * * * * * *
 "(20) The commission shall have power to issue such certificate as prayed for, or to refuse to issue it, or to issue it for a portion or portions of a line of railroad, or extension thereof, described in the application, or for the partial exercise only of such right or privilege, and may attach to the issuance of the certificate such terms and conditions as in its judgment and public convenience and necessity may require. From and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate and proceed with the construction; operation or abandonment covered thereby. Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest;"
 
 
 [3]
 See fn. 1, supra
 
 
 [4]
 In the Jay Street Connecting Railroad Abandonment proceedings the Commission stated that, "the same conclusions on the facts and law would justify our permitting the physical abandonment of the line herein by the lessor of the railroad properties, if such lessor were subject to our jurisdiction and therefore was obligated to continue the lessee's carrier operations, unless legally relieved of that requirement."
 
 
 [5]
 See fn. 1, supra
 
 
 [6]
 It is true that the Commission, when these defendants were not before it, indicated the belief that it had no jurisdiction over them and that they were under no duty to operate the line even in the absence of an abandonment order. But this comment could in no way estop the plaintiffs from bringing action under § 1 (20); it is clear that the United States district court is the only forum having jurisdiction to prevent an illegal abandonment begun without the institution by the carrier of a § 1(20) proceeding before the Commission. Texas & Pac. R. Co. v. Gulf, C., & S. F. R. Co., 270 U.S. 266, 273, 46 S.Ct. 263, 70 L.Ed. 578; Powell v. United States, 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643; cf. Thompson v. Texas Mexican R. Co., supra
 
 
 [7]
 See Interstate Commerce Commission v. Railway Labor Executive Assn., 315 U.S. 373, 62 S.Ct. 717, 86 L.Ed. 904; Smith v. Hoboken R. Co., supra; Thompson v. Texas Mexican R. Co., supra; Central New Eng. R. Co. v. B. & A. R. Co., supra; Gulf, Mobile & Ohio R. Co. v. Illinois Central R. Co., 5 Cir., 225 F.2d 816; Village of Mantorville v. Chicago Great Western R. Co., supra