288 F.2d 356
 Williams MEYERS, Standard Brands Incorporated, Brillo
Manufacturing Co., Inc., Atlantic Gummed Paper Corp.,
Warshaw Manufacturing, Inc., and Abraham & Straus Division
of Federated Department Stores, Inc., Plaintiffs-Appellees,
v.
JAY STREET CONNECTING RAILROAD, and Moses Spatt, Milton E.
Spatt, Joseph S. Wohl, and Herbert S. Struller,
individually and as officers and
directors thereof,
Defendants-Appellants.
 No. 96, Docket 25709.
 United States Court of Appeals Second Circuit.
 Argued Dec. 13, 1960.
Decided April 3, 1961.
 
 Richard Swan Buell, Buell, Clifton & Turner, New York City (Andrew M. Calamari, Michael J. Whelan, New York City, on the brief), for William Meyers, Atlantic Gummed Paper Corp. and Warshaw Manufacturing, Inc., plaintiffs-appellees.
 Morris Gottlieb, New York City, for Brillo Mfg. Co., Inc., plaintiff-appellee.
 Jacob Imberman, New York City (Proskauer Rose Goetz & Mendelsohn, New York City, on the brief), for Abraham & Straus Division of Federated Department Stores, Inc., plaintiff-appellee.
 Whitney North Seymour, New York City (Richard Hawkins, Robert S. Carlson, Simpson Thacher & Bartlett, New York City, on the brief), for defendants-appellants.
 Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 The Jay Street Connecting Railroad, whose main track extends for seven city blocks along the East River in Brooklyn, and four of its officers and directors appeal from an order enjoining them from abandoning the road until a certificate of the Interstate Commerce Commission permitting abandonment of the Jay Street line became effective. Since the injunction issued on May 26, 1959, the railroad has shut down pursuant to the Commission's certificate and thus we must consider whether the appeal should be dismissed as moot before passing upon the merit of appellants' attack upon the injunction. We hold that the appeal is not moot and, on the merits, that the injunction properly issued.
 
 
 2
 This controversy has been before us on several previous occasions. It was touched off by the railroad's announcement on August 6, 1958, that a shortage of funds would compel it to discontinue service in two days. Before it could carry out its plan, Judge Abruzzo, acting on the application of shippers and an owner of buildings serviced by the railroad, appellees herein, ruled that under 1(18) of the Interstate Commerce Act, 49 U.S.C.A. 1(18), the railroad could not be abandoned without a certificate of public convenience and necessity issued by the Interstate Commerce Commission. Pursuant to this ruling, he issued a temporary restraining order and later a preliminary injunction restraining the railroad and its officers from discontinuing operations. Issuance of the preliminary injunction was appealed to us and we affirmed in Meyers v. Jay Street Connecting Railroad, 2 Cir., 1958, 259 F.2d 532.[1]
 
 
 3
 Following our decision, trial was held on various days between February 5 and February 20, 1959, and on April 14, 1959, the district court announced an opinion holding that the railroad and its officers should be enjoined from discontinuing service 'until such time as the ICC passes upon (their application for abandonment of the line).' On May 26, 1959, the district court entered the order now before us, saying that the preliminary injunction, set forth in the margin,[2] was to remain in effect until the Commission's certificate permitting abandonment of the railroad 'became effective.'
 
 
 4
 Meanwhile the Commission, on April 13, 1959, issued an order in which they authorized abandonment of the railroad, 307 ICC 137. This order was amended on May 26, 1959, at which time the Commission stated that the order should take effect 30 days after service upon the appellees. The order was affirmed on June 26, 1959, by a statutory three-judge court in Jay Street Connecting Railroad v. United States, D.C.E.D.N.Y.1959, 174 F.Supp. 609.[3] No appeal was taken and service on the Jay Street line was in fact discontinued on or about Jule 27, 1959.
 
 I.
 
 5
 The appellees point to this sequence of events and argue that the appeal is moot since the order appealed from no longer restrains appellants.[4] We hold, however, that the appeal is not moot since the preliminary injunction was conditioned upon the giving of a $50,000 bond to cover appellants' losses in the event that a permanent injunction was found to be improper.[5] Our decision on this appeal, therefore, will determine whether appellants can recover on that bond and whether appellees are liable upon it.
 
 
 6
 The question presented is whether the requirement of Article III of the Constitution that there be a 'case' or 'controversy' is satisfied by the possibility that the issue now before us will, if we dismiss the appeal as moot, arise again in a suit upon the bond. Clearly, the Constitutional requirement that the facts be fully developed so that the court will avoid formulating a vague rule of law without the focus provided by a concrete set of facts to which it will apply has been met in this case. Compare United Public Workers of America (C.I.O.) v. Mitchell, 1947, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. The more doubtful question is whether the bond ensures that the parties will be sufficiently adverse and sufficiently interested in the outcome to satisfy Article III. We believe that it does.
 
 
 7
 If there is substantial likelihood that the decision of the court will be determinative in some future litigation between the same parties or their privies, the court can be confident that the parties' self-interest will impel them to press every argument at their command and thereby help the court reach the right result and the interest in judicial economy is insignificant since the same issue will in all probability come before the court at a later date. The federal courts have recognized this and have held that the mere possibility that their decision will be advisory because the parties do not take further steps does not of itself make a case moot.
 
 
 8
 Tjus where a regulatory order expires before a challenge to a decision upholding it can be heard on appeal, the appeal will nevertheless be heard if the order is likely to be reissued. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 1911, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; Gay Union Corporation v. Wallace, 71 App.D.C. 382, 112 F.2d 192, certiorari denied 1940, 310 U.S. 647, 60 S.Ct. 1098, 84 L.Ed. 1414; cf. Securities and Exchange Commission v. Okin, 2 Cir., 1943, 132 F.2d 784; compare Murphy v. Benson, 2 Cir., 1959, 270 F.2d 419. Similarly, if an allegedly illegal course of conduct is discontinued but is likely to be reinstituted if an appeal from an order prohibiting it is dismissed the case will not be considered moot. United States v. Trans-Missouri Freight Association, 1897, 166 U.S. 290, 307-310, 17 S.Ct. 540, 41 L.Ed. 1007; United States v. W. T. Grant Co., 1953, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; United States v. Aluminum Company of America, 2 Cir., 1945, 148 F.2d 416, 448 (sitting as a court of last resort). Similar also are those cases where an attack is made upon a criminal conviction, the sentence for which has expired before an appeal can be heard. The Supreme Court has said that the justiciability of such appeals depends upon whether the appellant can show that the legality of his conviction might be a litigable issue in some future controversy. Fiswick v. United States, 1946, 329 U.S. 211, 67 S.C. 224, 91 L.Ed. 196 (Delay alien's eligibility for naturalization if he seeks naturalization); United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (affect right to vote if seeks to vote; increase penalty under multiple offender statute if again convicted); St. Pierre v. United States, 1943, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (no showing 'that further penalties or disabilities can be imposed upon him as a result of' conviction).[6]
 
 
 9
 The decision on whether the hear a case of this nature depends primarily upon the likelihood that the issue before the court will arise in future litigation between the parties. See generally Diamond, Federal Jurisdiction to Decide Moot Cases, 94 U.Pa.L.Rev. 125, 133-46 (1946). It seems to us that the likelihood that the appellants in this case will sue upon the bond if victorious here is overwhelming.[7] Of course the mere fact that they have spent the money to come before us, represented by renowned counsel, does not necessarily establish that ultimate victory upon the bond is their reason for seeking an appeal and does not of itself make their appeal justiciable. Cf. People of State of California v. San Pablo & Tulare R.R., 1893, 149 U.S. 308, 13 S.Ct. 876; St. Pierre v. United States, 1943, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199. But this is indicative of their purpose and it is unrealistic to assume that they came before us merely seeking a moral victory.
 
 
 10
 To be sure, this case is different from the repetitive administrative order and discontinued conduct cases cited above in one respect. In those cases, the party asking the court to dismiss the appeal as moot could take advantage of the other party and prevent an appellate court from ever deciding upon the legality of their conduct by limiting the effective period of their orders or discontinuing their conduct at the crucial time. In this case, the appellees have no such power since the appellants could sue them upon the bond and that suit could not be made moot.
 
 
 11
 But the unsatisfactory nature of such a remedy is in itself reason to decide the issue between the parties now. In order to obtain judgment upon the bond the parties would have to relitigate the facts that were presented to the district court upon the injunction trial[8] and the issue would be whether an injunction could properly have been issued. Undoubtedly, the district court would then hold against them as it already has and an appeal would be taken to this court raising precisely the same issue as is now before us.
 
 
 12
 The procedure would be frustrating to the parties and would violate rather than serve the policy favoring economy of judicial effort. We are confident that the bond guarantees the parties' vigorous participation in this appeal. To dismiss it as moot would be formalistic to an extreme and we therefore turn to the merits.
 
 II.
 
 13
 The appellants attack the injunction on three grounds. First, they say that 1(22) of the Interstate Commerce Act, 49 U.S.C.A. 1(22), set forth in the margin,[9] exempted them from the Act and therefore that they could abandon the road at will. Second, they argue that even if subject to the Act, the railroad should not have been required to continue operations since it was without funds. Finally, they contend that the injunction compelled the individual appellants to use their personal funds to operate the railroad and that such an order is unwarranted.
 
 
 14
 The appellees argue that our decision affirming the preliminary injunction, Meyers v. Jay Street Connecting Railroad, 2 Cir., 1958, 259 F.2d 532, resolved all these issues and therefore is binding upon as the law of the case. We do not consider ourselves bound by that earlier decision,[10] but reaffirm our views stated there and approve the permanent injunction as we did the preliminary injunction.
 
 
 15
 Though a portion of the railroad was, in the words of 1(22) of the Act composed of 'spur * * * switching or side tracks,' located wholly within New York State, it had also a 'main' track and provided interstate service by ferrying railroad cars to New Jersey. Therefore, the railroad could not be abandoned without the Commission's certificate. Meyers v. Jay Street Connecting Railroad, 2 Cir., 1958, 259 F.2d 532-536; Meyers v. Jay Street Connecting Railroad, 2 Cir., 1959, 262 F.2d 676.
 
 
 16
 We come now to the only question which needs further discussion, namely, the contention that the injunction compelled the individual appellants to use their personal funds to operate the railroad and that such an order is unwarranted.[11] Certainly there was no specific requirement that the individuals should use their personal funds to keep the railroad in operation. The order was directed to them 'in their capacity as officers or directors or employees of said defendant, Jay Street Connecting Railroad.' See note 2, supra. But even if it be assumed that the order impliedly required them to use their own funds, we hold that under the special circumstances of this cash such an order was proper.
 
 
 17
 The railroad's books had shown it to be operating at a loss for five years prior to the unjustified abandonment attempt in August of 1958. Despite this, the appellants had made no attempt to obtain a rate increase, or to get permission from the Commission to abandon their apparently unprofitable line. As we pointed out in Meyers v. Jay Street Connecting Railroad, 2 Cir., 1958, 259 F.2d 532, at page 536, they could have sought to escape personal liability by petitioning for reorganization of the railroad under 77 of the Bankruptcy Act, 11 U.S.C.A. 205.[12] This case is quite different from one where there is no way to escape personal liability or one where operation of the railroad suddenly-- because of a catastrophe-- becomes impossible without contribution from its owners.
 
 
 18
 Under the circumstances of this case the hardship imposed was fully justified in view of the public interest in not permitting abandonment of railroad service without approval of the ICC as required by the Interstate Commerce Act.
 
 
 19
 Affirmed.
 
 
 
 [1]
 The district court then modified its injunction by excluding all spur and side tracks from its scope. We reversed the order modifying the injunction in Meyers v. Jay Street Connecting Railway, 2 Cir., 1959, 262 F.2d 676, and the preliminary injunction was thereupon reinstated
 
 
 [2]
 'The Court having written and filed its opinion, it is
 Ordered, that defendants, jay Street Connecting Railroad, and Moses Spatt, Milton E. Spatt, Joseph S. Wohl, and Herbert S. Struller, in their capacity as officers or directors or employees of said defendant, Jay Street Connecting Railroad, and their agents, servants, employees and all persons in active concert and participation with them be and they hereby are restrained and enjoined, until October 8, 1958 and thereafter as the Court or the trial judge may direct, from directly or indirectly abandoning or ceasing operations of the defendant, Jay Street Connecting Railroad, or refusing to receive, deliver or transport carload freight for shipment via its line to other lines and other carriers with which said defendant interchanges traffic, or from refusing to receive, deliver or transport carload freight from such other lines to points on its line, from embargoing freight or maintaining or continuing in effect any embargo of freight in interstate commerce and said defendants are hereby ordered and directed to cancel or cause to be cancelled any embargo heretofore put into effect and to continue operations of defendant, Jay Street Connecting Railroad, or if operations have been discontinued in any manner, to resume operations thereof; provided that plaintiffs give (383) security approved by the Court in the sum of $50,000 for the payment of such losses which the defendants may encounter or incur from this date until the case is tried should the defendants prevail in this action.'
 
 
 [3]
 On June 30, 1959, certain of the appellees brought an action against the owners of the land on which the railroad had been operated to compel them to continue its operation until themselves authorized by the Commission to abandon the line. The district court dismissed the complaint and we affirmed the district court. Meyers v. Famous Realty, Inc., 1959, 271 F.2d 811, certiorari denied 1960, 362 U.S. 910, 80 S.Ct. 681, 4 L.Ed.2d 619
 
 
 [4]
 For the purposes of this appeal it is not necessary to decide exactly when the Commission's certificate became effective and the injunction expired. All the possible dates-- 30 days after service of the Commission's May 26, 1959 order, or June 26, 1959 when the three-judge district court upheld the Commission's order, or August 25, 1959 when time to appeal from the ruling of the three-judge district court ran-- are after the injunction was granted but before the appeal from it was heard by us
 
 
 [5]
 The district court's order conditioned the injunction upon 'security approved by the court in the sum of $50,000 for the payment of such losses which the defendants may encounter or incur from (the date of issuance) until the case is tried should the defendants prevail in this action * * *' Appellees Brillo Manufacturing Co. and Abraham & Straus Division of Federated Department Stores, Inc. claim that they did not sign the $50,000 bond posted by the other appellees pursuant to the court's order
 
 
 [6]
 Parker v. Ellis, 1960, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963, decided by the Supreme Court last year, does not overrule these cases. Although the court's per curiam opinion mentions mootness, its decision is based upon construction of the habeas corpus statute, 28 U.S.C. 2241, which the court held limited the federal court's power to entertain collateral attacks upon state convictions to cases where the conviction being attacked provides the basis for present incarceration
 
 
 [7]
 It is also true that in this case the danger that something will not be presented to us is less than in most cases which arguably have become moot on appeal. The relevant facts are the same as they were when the preliminary injunction's validity was argued before us and the parties clearly were interested in the litigation's outcome at that time
 
 
 [8]
 The judgment of the district court granting the injunction would have to be vacated so that it would not be res judicata between the parties. United States v. Munsingwear, 1950, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36
 
 
 [9]
 Section 1(22) of the Interstate Commerce Act (49 U.S.C.A. 1(22)) provides:
 'The authority of the Commission conferred by paragraphs (18) to (21) of this section, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation.'
 
 
 [10]
 The issue on an appeal from a preliminary injunction is different from where a permanent injunction is tested, Benson Hotel Corp. v. Woods, 8 Cir., 1948, 168 F.2d 694, 697; cf. Hamilton Watch, Co. v. Benrus Watch Co., 2 Cir., 1953, 206 F.2d 738, 742, and in this circuit at least the "law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense,' Higgins v. California Prune & Apricot Grower, Inc., 2 Cir., 1924, 3 F.2d 896, at page 898; Alexander v. Nash Kelvinator Corp., 2 Cir., 1959, 271 F.2d 524, 526
 
 
 [11]
 The record is not clear but it appears that Moses Spatt and Joseph S. Wohl, who were the sole owners of the railroad's stock, were the only individuals who contributed funds to enable the railroad to operate
 
 
 [12]
 It has been suggested by the appellees that the individual appellants chose to finance the railroad despite its losses because reorganization proceedings might have rendered impossible consummation of a sale of property owned by the individual appellants, including some of the property used by the railroad, to the Consolidated Edison Company for $1,300,000. The contract of sale was entered into on July 29, 1958, seven days before the railroad announced its intent to abandon, and the closing of title was conditioned upon removal of the railroad's float bridge at Bridge Street